KATZ-CRAIG CONTRACTING COMPANY, APPELLEE, v. CHICAGO, ST. PAUL, MINNEAPOLIS & OMAHA RAILWAY COMPANY, APPELLANT.

FILED MAY 17, 1913. No. 17,156.

Carriers: FREIGHT RATES: ACTION FOR OVERCHARGE. Section 5, ch. 90, laws 1907, made it the duty of all common carriers to file with the state railway commission, within 30 days after the act took effect, "all freight and passenger schedules, classifications, rates, tariffs and charges used by said common carriers and in effect on January 1st, 1907." Subdivision c, sec. 15, of the act prohibits changes being made in "any rate, schedule or classification until

application has been made to the railway commission and permission had for that purpose." In this case it appears that the rate actually charged and received for the transportation of crushed stone from Omaha to Florence for several years was $5 a car-load, which is a just and remunerative rate, while the published schedule rate was 2 cents per cwt., which the railway commision held to be excessive and discriminatory. There is no evidence of a change in either the published or the actual rate before January 1, 1907, or by the railway commission before the freight was shipped. The plaintiff was charged at the higher rate. *Held*, That the actual rate used and in effect on and prior to January 1, 1907, was the rate which should have been charged, and that the shipper is entitled to recover the overcharge.

APPEAL from the district court for Douglas county: HOWARD KENNEDY, JUDGE. *Affirmed.*

*Carl C. Wright, B. H. Dunham, A. A. McLaughlin* and *McGilton, Gaines & Smith,* for appellant.

*Charles S. Elgutter, contra.*

LETTON, J.

Action to recover overcharge for shipment of freight. Plaintiff recovered, and defendant appeals.

The petition alleges that the plaintiff is an engineering and contracting company. Between May 1, 1907, and June 1, 1909, plaintiff shipped 462 car-loads of crushed stone from Omaha to Florence over defendant's railroad for use in the construction of macadam roads. For five years prior to January 1, 1907, the defendant published, and charged and collected a freight rate from Omaha to Florence of $5 a car-load on coal, ice, crushed stone, and like commodities, and this rate was continued and such freight carried thereunder until March 15, 1907, when it arbitrarily, and without notice to plaintiff, raised the rate on crushed rock, stone and sand to the rate of 2 cents per cwt., at the same time maintaining the rate of $5 a car-load on coal and ice between the same points. Plaintiff was compelled, in order to fulfil its contracts, to ship the rock over defendant's railway, it being the only rail-

road between these points, and to pay the sum of $7,120 as freight at the rate of 2 cents per cwt. It is alleged that the rate of 2 cents per cwt. is unreasonable and extortionate, and that a reasonable and lawful rate is the sum of 1 cent per cwt. for such service. It is also alleged that on June 23, 1908, plaintiff filed a complaint with the Nebraska State Railway Commission complaining against the excessive rates, and praying for the naming of a reasonable rate; that a hearing was had and evidence taken, and on June 2, 1909, an opinion was filed and an order made by the commission finding that the rate charged was excessive, unreasonable, and discriminatory, and that the rate of 1 cent per cwt., or a minimum rate of $5 a car, is a reasonable rate, and that since this order was made the rate of 1 cent per cwt. has been in force. The prayer is to recover the $3,560 overcharge, with interest.

In the answer the defendant admits that prior to January 1, 1907, certain commodity rates had been annually fixed for the movement of car-loads of coal, ice, crushed rock, sand and the like, at a rate of $5 a car-load, and that up to said date of January 1, 1907, various commodities had been hauled between Omaha and Florence at said rate, but denies that said tariff was ever a part of the published tariff of defendant railroad; alleges that this rate expired on December 31, 1906; that the published tariffs in effect on January 1, 1907, provided for a rate of 2 cents per cwt. for crushed rock, and that if any charge for less than that amount was collected after January 1, 1907, the same was collected in error; denies that the rate was unreasonable, extortionate or discriminatory; pleads that the rate had been duly filed with and approved by the Nebraska State Railway Commission, and thereby became the only lawful and legal rate which defendant was required under a heavy penalty to collect. It also admits the proceedings before the railway commission and its order reducing the rate. A reply was filed denying the affirmative matter in the answer.

Omitting objections and exceptions, the record shows

that at the trial it was stipulated that $7,120 was paid for the shipments at the rate of 2 cents per cwt. according to the tariff of the defendant and the amendments thereto issued February 18, 1907, which took effect March 26, 1907, and was filed with the Nebraska State Railway Commission April 27, 1907. That said rates remained in effect according to the published tariffs of the defendant company until modified by the order of the Nebraska State Railway Commission, as set forth in plaintiff's petition. The pleadings and the opinion and judgment in the case before the railway commission were then received in evidence, over defendant's objections, and the plaintiff rested.

Defendant then called Lyman Sholes, who testified as follows: "Q. Mr. Sholes, under what class in the classification in force during 1907 and 1908 did crushed stone move? A. Class E. Q. Now, Mr. Sholes, do you know whether on January 1st, 1907, the same rate on Class E stuff from Omaha to Florence was in force and shown by the published tariffs that was shown in the published tariff which is mentioned in the stipulation agreed to here, which is issued February 18th, 1907? A. The rates were the same. Q. Do you know? A. Yes, sir. Q. Now, then, what is the fact as to whether the rates on January 1st, 1907, as shown by the tariffs, was the same as the rate on crushed stone from Omaha to Florence as shown in the tariff issued February 18th, 1907, and referred to in the stipulation introduced by the plaintiff? A. There was no change in the rate. The tariffs were both identical. Q. I will ask you whether exhibit 5 is the same tariff of the defendant company issued February 18th, 1907, to which reference was made in the stipulation? A. Yes, sir. Q. Now, examine exhibit 6. Is that the tariff which was in force on the defendant road, in relation to these rates in question, on January 1st, 1907? A. Yes, sir."

So much of the tariff as refers to the rate on Class E from Omaha to Florence, in exhibit 5, was read into the record. Under the column headed: "Between Omaha,

Nebraska, and also Council Bluffs and Missouri Valley, Iowa, as per note below," and "Florence," and, under that heading the word "Florence," and, under the heading "car-loads," and "Class E," the rate "2 cents per cwt." From exhibit 6 was read into the record, under the heading "Between Omaha, Nebraska, and Florence,   *   *   * Car-load rates under Class E, 2 cents per hundred pounds." Both parties then rested. Aside from the admissions in the respective answers of the defendant, this is all the evidence in the case.

In its answer before the railway commission, the defendant admits that, prior to January 1, 1907, its charges for transporting sand and stone from Omaha to Florence was the sum of $5 a car, when cars were not loaded in excess of their marked capacity, and further admits that, during the year 1907, it transported for said complainants between said points several cars of soft coal, and charged and collected the rate of $5 a car.

A portion of defendant's argument, as set forth in its brief, is based upon the provisions of the act of 1907, known as the "Aldrich Act," which applies only to the transportation of certain specified classes of freight. At the time of the collection of the freight, defendant took the position that crushed stone was not "building material," and therefore did not come within the provisions of that act, and for that reason collected what it claimed to be the full tariff rate, and not 85 per cent. thereof. At the oral argument it still took this ground. For the purposes of this case, and without examining into what perhaps may be a debatable question, we are willing to take the appellant at its word. It cannot, therefore, claim immunity under any of the provisions of that act.

Defendant relies upon the proposition that the railway commission act made it the duty of the company to file with the railway commission all schedules in effect on January 1, 1907, under a severe penalty for failure to do so, and that the carrier was prohibited from charging less than the schedule rates, and from changing any rate,

schedule or classification; that the rate, according to the published schedules of January 1, 1907, was 2 cents per cwt. on crushed stone, and that this was the legal rate which remained in force until altered by the order of the commission.

On the other hand, plaintiff insists that the actual rate in effect on January 1, 1907, was $5 a car-load; that this rate had been in effect for years before, and was collected and charged afterwards; that it was never legally changed; and that the higher rate was illegally charged and collected from the plaintiff until the railway commission act restored the former rate, after finding the changed rate to be, as plaintiff alleges it is, unreasonable, extortionate and discriminatory.

By section 5, art. VIII, ch. 72, Comp. St. 1911 (laws 1907, ch. 90), commonly known as the "Railway Commission Act," it was made the duty of all common carriers within the state to file with the state railway commission, within 30 days after the act took effect (which was on March 27, 1907), "all freight and passenger schedules, classifications, rates, tariffs and charges used by said common carriers and in effect on January 1st, 1907," under a severe penalty for a failure to do so. This section further provides that the railway commission shall fix, as soon as practicable thereafter, a schedule and classification of rates and charges for the transportation of freights upon a notice to the carrier and a hearing, and that the rates thus fixed "are *prima facie* just and reasonable." It also provides for the filing of complaints against the rates thus fixed, for a hearing thereon and for a decision by the commission, and for appeal to the supreme court, and that a decision made by the commission upon any complaint, which changes or modifies any schedule of rates, shall also be *prima facie* evidence that the rates fixed thereby are just and reasonable. By subdivision *a,* sec. 14, unjust discriminations are prohibited under penalties, and it is provided that if any railroad company "subjects any particular description of traffic to any undue or unreasonable

prejudice, delay or disadvantage in any respect whatsoever, the same shall constitute an unjust discrimination, which is hereby prohibited." By subdivision *c*, sec. 15: "It is hereby declared to be unlawful for any railway company or common carrier to change any rate, schedule or classification until application has been made to the railway commission and permission had for that purpose." At the time the freight was consigned, no action had been taken by the railway commission fixing the proper rates, as the statute directs, nor had any change in the January 1, 1907, rate been authorized by that body.

While a number of other questions are raised, the determination of this case rests mainly upon the question whether the rate to which the statute refers, which the carrier and its agents are forbidden to change, is the rate which was "used" and "in effect" on January 1, 1907, and which had been charged and collected for years, or whether it was the rate named in the printed schedule rate under Class E. Defendant admits that prior to January 1, 1907, the charges for transporting crushed stone was $5 a car-load. It has not established the fact by any competent testimony that this rate of $5 a car-load expired by limitation on December 31, 1906, or that the rate was ever changed upon crushed stone before the freight at the rate of 2 cents per cwt. was collected from the plaintiff. In the absence of any evidence that the $5 rate was changed on or before January 1, 1907, the presumption of continuance applies. It is true that the printed schedules fixed the rate under classification E at 2 cents per cwt. both before and after January 1, 1907, but for years prior to that date the actual rate charged and collected had been $5 a car, while the printed rate was 2 cents per cwt. The statute does not apply alone to schedules. The railway company is required to file all "schedules, classifications, *rates*, tariffs *and charges used* \* \* \* *and in effect* on January 1st, 1907," and by subdivision *c*, sec. 15, it is declared unlawful to change "any *rate*, schedule or classification until application has been

made to the railway commission and permission had for that purpose."

In *State v. Pacific Express Co.*, 80 Neb. 823, 837, it is said, speaking of the act relating to express companies, the language of which is much more restricted than that of this act, in that such companies are prohibited from charging more than a certain proportion "of the rate as shown by the schedule," while this act prohibits a charge in excess of "the rates used * * * and in effect": "It cannot be reasonably contended that it was the intention of the legislature that the rates set forth in the written schedule filed should be taken as the basis, or as anything more than evidence of the rate which was actually charged on January 1. If, by mistake, the schedule filed showed a rate other than that actually charged, it would be unreasonable to say that a rate 'as shown by the schedule' should be taken as the basis, as a narrow and literal reading of the act would require, and not the rate which was actually charged and in force on the 1st day of January, 1907." It could never have been the intention of the legislature that, where a paper rate was in existence which had not been used for years, while at the same time an actual rate was in force, which was properly remunerative, the discriminatory and excessive paper or schedule rate should be made the legal rate, and not the rate which was actually being charged, and which was reasonable and just.

Moreover, while the defendant has pleaded that the rate of 2 cents per cwt. was approved by the railway commission, there is absolutely no proof of this allegation. On the contrary, the direct proof is that, as soon as the matter was called to the attention of that body, it found that "the present rates charged and collected by the defendant company are, under the facts above set forth, unreasonable, excessive and discriminatory," and it further found that the rate of 1 cent a hundred pounds or $5 a car-load was a reasonable rate for such transportation. Defendant has offered no proof that the rate of 1 cent per cwt. is

not sufficiently remunerative, or that the rate of 2 cents per cwt. is not unjust and discriminatory. It seems clear that there is no substantial difference in the transportation of brick, sand, crushed rock, coal or ice. The opinion of the railway commission is clear, positive and emphatic upon this point, and the action of the railway company itself for a series of years inevitably leads to this conclusion. The evidence satisfies us that the commodity rate which was fixed by the defendant, which had been in effect so many years, which there is no evidence to show was changed on or before January 1, 1907, and which was afterwards found by the railway commission to be the just and reasonable rate, is the rate which should have been charged, and was the legal rate at the time the money was collected from plaintiff.

The judgment of the district court is

AFFIRMED.

Rose, Fawcett and Hamer, JJ., not sitting.