FRED F. SHIELDS COMPANY, APPELLANT, V. CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY, APPELLEE.

276 N. W. 925

FILED JANUARY 4, 1938.   No. 30138.

*Hugh La Master*, for appellant.

*J. W. Weingarten* and *W. P. Loomis, contra.*

Heard before GOSS, C. J., ROSE, EBERLY, PAINE, CARTER and MESSMORE, JJ., and ELDRED, District Judge.

ROSE, J.

This is an action at law to recover alleged overcharges exacted by defendant from plaintiff for transporting carloads of sand and gravel by rail from Allis, Nebraska, to Omaha. Plaintiff, Fred F. Shields Company, operated a sand and gravel pit at Allis. The Chicago, Burlington & Quincy Railroad Company, defendant, operates a railroad between Allis and Omaha.

The substance of the claim for damages is that defendant, beginning March 17, 1931, and continuing through October 31, 1931, charged and received an excessive freight rate of 60 cents a ton for carload shipments of sand and gravel from Allis to Omaha, instead of the lawful rate of 45 cents a ton, the gross charges and payments for that period being $11,750.83 and the aggregate for lawful charges being $8,813.34, making the overcharges $2,937.49, for which judgment is demanded. The shipments and freight charges exacted are enumerated in the petition.

The answer of defendant denied that an excessive rate was charged or paid for plaintiff's shipments of sand and gravel in carloads from Allis to Omaha during the period between and including March 17, 1931, and October 31, 1931, and alleged that the lawful freight rate for such shipments, as incorporated in the published tariffs, sched-

ules and classifications filed with and fixed by the Nebraska state railway commission, was three cents a hundred weight or 60 cents a ton. The facts on which each party relies are stated in detail in the respective pleadings.

A jury was waived and the cause tried before the district court. There was a general finding in favor of defendant, and the action was dismissed. Plaintiff appealed.

The controversy over the rate for shipments of sand and gravel from Allis to Omaha arose from diverse views of the parties on the rate actually fixed by the Nebraska state railway commission for the transportation services performed by defendant for plaintiff between and including the dates March 17, 1931, and October 31, 1931. The power to fix intrastate freight rates for common carriers was committed by Constitution and statute to the commission. The position of plaintiff is that the legal rate in controversy was 45 cents a ton from Allis to Omaha. The contention of defendant is that it was 60 cents a ton between those places. The solution of the problem must be found in the records of the rate-making body, called for convenience the "Commission."

The undisputed evidence is that the commission, December 4, 1923, authorized the rate of three cents a hundred weight, or 60 cents a ton, on sand and gravel from Allis to Omaha, the rate paid by plaintiff. That rate appeared in the published tariffs, schedules and classifications of defendant and was effective January 15, 1924. Prior to plaintiff's shipments there was no specific order of the commission changing or modifying in direct terms the 60-cent rate from Allis to Omaha. That rate remained continuously in force throughout the period of plaintiff's claim unless a valid change was authorized by the commission. Comp. St. 1929, sec. 75-712; *Katz-Craig Contracting Co. v. Chicago, St. P., M. & O. R. Co.*, 93 Neb. 674, 141 N. W. 1131.

The view which plaintiff takes of the record is that the commission changed the 60-cent rate on sand and gravel from Allis to Omaha to 45 cents and that the latter rate applied to the shipments for which the higher rate was

charged and paid. The proofs show clearly that, on application of defendant, the commission made an order dated May 28, 1931, effective the same day, fixing the rate on sand and gravel from Allis to Ralston at 45 cents a ton. There was elaborate argument by plaintiff on the propositions that the commission considered Omaha the same as Ralston for the purpose of this 45-cent rate which, as asserted, should have read Allis to Omaha; that by order of the commission Ralston had been abandoned as a regular railroad station and the mileage to and from that point eliminated from the tariffs and Omaha substituted for Ralston for the purpose of distances and rates; that the commission had put Ralston in the Omaha switching district, where it became a part thereof, making the 45-cent rate the rate to Omaha. In the advocacy supporting these propositions, there is emphasis on the fact that the original rate was 60 cents a ton to both Ralston and Omaha and that defendant was directed by formal order of the commission November 18, 1929, "To revise and amend its tariffs in such a manner as to include what is now known as 'Ralston' within the switching district of Omaha and South Omaha, and to list as in accordance with proposed tariffs, now filed with the commission, Ralston industries as being within the Omaha-South Omaha switching district, and to carry such industries in its switching tariffs." The order also directed defendant to remove the name of Ralston as a station from its table of official distances and to cancel any and all class and commodity rates published specifically between Ralston and other stations in Nebraska.

However plausible the argument on these propositions may be regarded, the deduction of plaintiff is refuted by undisputed facts and the law applicable thereto. The haul from Allis to Omaha is 7.6 miles longer than to Ralston. While plaintiff's carloads of sand and gravel were being transported to Omaha during 1931, Ralston was a shipping point, where there were local side-tracks, stockyards and a station-house in charge of an agent. The service of the carrier was greater to Omaha than to Ralston. The switch-

ing expenses of defendant at Omaha were greater than for local switching at Ralston. The latter is an incorporated village outside the city limits of Omaha. The switching facilities at the two points of destination were different. The application for a reduced rate to Ralston, without changing the fixed 60-cent rate to Omaha, was made by defendant. The department of public works in charge of public-road building joined in the application for the purpose of procuring a reduced rate on sand and gravel to Ralston where vast quantities of those materials were required for the paving of public highways. Defendant was confronted by an emergency created by the competition of trucks and, to meet it, demanded the 45-cent rate to Ralston without asking for any reduction in the 60-cent rate to Omaha. The commission declared an emergency, made the reduced rate effective May 28, 1931, and provided that it should expire December 31, 1931, unless sooner changed or canceled. This action was taken after Ralston had been canceled as a regular station and had been included in the Omaha switching district. It is well-settled law that a rate-making commission may make a difference in rates from the initial shipping point to different places in the same switching district, where the difference in conditions so warrants. The emergency order reducing the rate from 60 cents a ton to 45 cents a ton on shipments from Allis to Ralston without disturbing the 60-cent rate to Omaha is clear. The same reduction of the rate to Omaha is not implied by orders and records of the commission or by conditions and circumstances. A 45-cent rate to Omaha was not published in the tariffs. In the proper view of the entire record, there were no overcharges on the shipments enumerated in plaintiff's claim. The dismissal below, therefore, is supported by the evidence and is free from error.

AFFIRMED.