IN RE INTEREST OF CASSANDRA L. AND TREVOR L., CHILDREN UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, V. GAIL L. AND ROBERT L., APPELLANTS.
IN RE INTEREST OF ZACHARY L., CASSANDRA L., AND TREVOR L., CHILDREN UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, V. GAIL L. AND ROBERT L., APPELLANTS.
543 N.W.2d 199

Filed February 6, 1996.   Nos. A-95-439, A-95-1369.

Robert F. Martin, P.C., and Connie Kearney for appellants.

Dean Skokan, Dodge County Attorney, and Sandra Silva for appellee.

HANNON, IRWIN, and MILLER-LERMAN, Judges.

HANNON, Judge.

In case No. A-95-439, Gail L. and Robert L., the parents of Cassandra L. and Trevor L., appeal from a preadjudication juvenile court proceeding in which the State removed the two children from their custody and placed custody with the Department of Social Services (DSS). The parents maintain that the predispositional order depriving them of custody of their children was improper because the evidence did not support the findings of the trial court in several respects, the court permitted double hearsay, the petition was vague and ambiguous, and the court did not appoint counsel or advise them of their rights. The State maintains that the order is not appealable and that this appeal is moot because it moved to dismiss the case in the juvenile court after the appeal was perfected. We conclude that the order appealed from is appealable, that the appeal was not rendered moot by the attempted dismissal, and that the record does not support further detention of the children pending adjudication. Accordingly, we reverse, and remand with direction to return the children to their parents unless within 8 days after the mandate is issued by this court the State establishes facts at a hearing which shall justify preadjudication removal of the children from their parents' home.

## RECORD IN TRANSCRIPT

The transcript of case No. A-95-439 shows that on March 24, 1995, a deputy county attorney filed a supplemental petition to have Cassandra and Trevor, who are minors alleged to have been born on December 27, 1989, and November 2, 1993, respectively, declared children as defined under Neb. Rev. Stat. § 43-247(3)(a) (Reissue 1993) because they

> are children whose parent, guardian or custodian neglects or refuses to provide proper or necessary subsistence or other care necessary for the health, morals or well-being of such juveniles, or who are [sic] in a situation or engages in an occupation dangerous to life or limb or injurious to the health or morals of such juveniles.

On that date, the judge also signed a summons commanding the parents to appear at a hearing set for March 27, 1995, at 10:30

a.m. "to respond to the matters raised in the foregoing petition."

The transcript contains an order which is dated March 24, 1995, but was filed March 29. This order shows the appearance of the judge, the guardian ad litem, a deputy county attorney, DSS protective service workers Tom Ritchie and Sara Baker, and Deputy Sheriff Steve Hespen, but not the parents of the children. This order states that Deputy Hespen was sworn. In the order, the court found that

> there is probable cause to believe Court will obtain jurisdiction.
>
> The Court further finds that reasonable efforts have been made to prevent placement of the children outside of the parental home; that continuation of the children in the parental home would be contrary to the welfare of the children; that reasonable efforts are being made to make it possible for the children to have a stable home; and the facts establish that emergency removal from the parental home was necessary and that the services available to the family could not have prevented placement of said endangered children.

The court order provided that the children should be placed with DSS for emergency foster care, with the parents being allowed supervised visitation "as outlined and determined by" DSS.

### EVIDENCE ADDUCED

The only bill of exceptions presented in case No. A–95–439 is for a hearing held on March 27 at which the parents were present but unrepresented. The typed transcription of the hearing is 12 pages in length. Before that hearing, the judge stated in the record: "The purpose of this hearing is solely for detention at this time. Anything presented here today will not be used for any other hearing."

The only evidence presented was the testimony of Deputy Hespen. He related that DSS reported to him that on March 9, Robert brought Cassandra to "play therapy," but she told her therapist that Robert was staying in the car because he was angry. Deputy Hespen also stated that he was told Cassandra

"had reportedly demonstrated to Terri [the therapist] that Bob [Robert] had — she flailed her arms around[,] that Bob had hit her all over, and had taken her — cupped her hands and hit herself on the side of the head, trying to imitate what was done to her." The deputy then testified that he talked to the therapist, but he related only what he told the therapist, not what, if anything, the therapist might have told him. It was also "reported" to him that Gail would not let Cassandra attend therapy or be interviewed unless one or both of the parents were present. On either March 17 or March 23, the therapist had requested that she be allowed to visit with Cassandra alone, but the parents objected. Deputy Hespen reported the alleged abuse to the county attorney, and an emergency pickup order was issued "out of the County Attorney's office." When Deputy Hespen picked the children up on March 24, the parents were upset, but allowed him to take the children. The therapist told Deputy Hespen that Cassandra stated to her that Cassandra wanted to visit with her without Gail being present. The therapist also told Deputy Hespen that Gail told her Gail did not like Cassandra's attitude after a visit with the therapist.

The reader will undoubtedly wonder as to the source of some of the deputy's hearsay. In the above summary, we have identified the source of his hearsay as fully as did his testimony. The above testimony was elicited by examination by the deputy county attorney and the guardian ad litem. When the guardian ad litem stated he had no further questions, the judge stated: "As indicated, Mr. and Mrs. [L.], this is solely for detention purposes. It might be best at this point that you have an opportunity to talk to counsel. With that in mind, you can step down." No further evidence was adduced.

After the hearing, the court orally found "probable cause for court jurisdiction" and asked the guardian ad litem for a recommendation. The guardian ad litem stated that the children are currently in foster care with DSS and that he "would recommend that that continue pending adjudication, and that the Court allow supervised visitation with the parents until the adjudication." At that point, Gail stated, "We need counsel." Apparently, poverty affidavits were prepared, but not made a part of the record. The judge then stated: "You've completed it?

May I see those please? Now, you've stated under oath that your total income is $1,753.00 a month, is that correct?" The judge stated that the parents did not qualify for court-appointed counsel. Robert stated: "If I may, sir, our attorney wants a $5,000.00 retainer. We will not be able to afford a proper defense here." The judge explained that they did not qualify for court-appointed counsel because the "federal guidelines show" that with their income they do not qualify. The court stated it "would allow supervised visitation" and set the next hearing for April 12 at 10 a.m. We find no journal entry of this hearing in the transcript.

The transcript contains an order dated March 24, 1995, and filed March 29, appointing a guardian ad litem for Cassandra and Trevor.

On April 24, the parents filed a notice of appeal to this court. This notice refers to their intention to appeal

> from the order of this court concerning the hearing occurring on March 27, 1995, detention hearing removing these children from the parental home, and from the issuance of the order dated March 24, 1995, in the absence of an affidavit showing probable cause or grounds, removing said children.

## ASSIGNMENTS OF ERROR

The parents allege 12 errors in case No. A–95–439, but we conclude these may be consolidated into allegations that the court erred (1) in signing the summons allowing removal of the children from the home without documentation showing reasons for emergency removal; (2) in finding probable cause for jurisdiction; (3) in removing the children from the home because the evidence does not show (a) that the children were in imminent danger, (b) that reasonable efforts were made to keep the children in their home, (c) that continuing custody in the parents was contrary to the children's welfare, and (d) that the children were placed in the least restrictive environment; (4) in permitting double hearsay; (5) in failing to find that the petition was vague and ambiguous; and (6) in failing to appoint the parents counsel or to advise them of their rights in juvenile proceedings.

## PROCEEDINGS AFTER APPEAL

Before oral argument was had in case No. A–95–439, the State filed a motion to dismiss on the basis that the order appealed from is not a final order. In effect, this motion is denied by this opinion.

On November 29, the State filed a motion asking this court to dismiss the appeal because it was moot, alleging that the underlying juvenile petition had been dismissed, that a petition to terminate the parents' rights to the children had been filed, and that "[t]he above–stated children were detained pursuant to the Petition to Terminate Parental Rights." This motion was not ruled upon prior to argument, but is overruled by this opinion.

Since the appeal in case No. A–95–439, the parents have filed two additional appeals. In case No. A–95–1368, the transcript shows that on November 21, the county attorney filed a motion to dismiss the proceedings in case No. A–95–439, and the judge signed an order of dismissal without prejudice on that date. The parents appealed from that order on the basis that the State continues to detain the children.

The parents also filed an appeal designated as case No. A–95–1369. The transcript of that case shows that on October 25, the State filed a petition requesting the termination of Robert and Gail's parental rights to Cassandra, Trevor, and another son, Zachary L., who is the subject of a separate juvenile proceeding in this court, case No. A–95–391. The petition for termination in case No. A–95–1369 alleges that

> under Section 43–292(2) R.R.S. Neb., grounds exist for the termination of the parental rights of the parents of said children, and that such termination would be in the best interest of the children, in that the parents have substantially and continuously or repeatedly neglected the juveniles and refused to give the juveniles necessary parental care and protection[.]

The transcript in case No. A–95–1369 also shows that on November 14, the court filed an order in that proceeding in which it found the parents were indigent and appointed separate counsel for them and also found that emergency custody of the children should be placed with DSS for appropriate placement. Interestingly, that order provides visitation shall be as previously

approved. There was also an order dated November 21, 1995, which is substantially the same as the previous order except that it orders the payment of child support and orders that all pretrial motions shall be filed by December 22, which matters shall be heard on January 10, 1996, and sets trial to commence on January 17. The parents appeal from the order of November 21, 1995.

## STANDARD OF REVIEW

Juvenile cases are reviewed de novo on the record, and an appellate court is required to reach a conclusion independent of the trial court's findings; however, where the evidence is in conflict, the appellate court will consider and may give weight to the fact that the trial court observed the witnesses and accepted one version of the facts over another. *In re Interest of J.T.B. and H.J.T.*, 245 Neb. 624, 514 N.W.2d 635 (1994). In addition, regarding a question of law, an appellate court has an obligation to reach a conclusion independent of the conclusion of the trial court. *Lindsay Mfg. Co. v. Universal Surety Co.*, 246 Neb. 495, 519 N.W.2d 530 (1994).

## DISCUSSION

*Appealability of Order.*

The State moved to dismiss the appeal in case No. A–95–439 on the basis that the order of temporary detention was not appealable. The Supreme Court has announced a clear and easy rule to follow:

> Although an ex parte temporary detention order keeping a juvenile's custody from his or her parent for a short period of time is not final, one entered under § 43–247(3)(a) and Neb. Rev. Stat. § 43–254 (Reissue 1988), after a hearing which continues to keep a juvenile's custody from the parent pending an adjudication hearing to determine whether the juvenile is neglected, is final and thus appealable.

*In re Interest of R.R.*, 239 Neb. 250, 252–53, 475 N.W.2d 518, 520 (1991) (citing *In re Interest of R.G.*, 238 Neb. 405, 470 N.W.2d 780 (1991)). In this case, the orders and hearings are sufficiently confused that it is difficult to apply even this clear rule.

The record shows that the children were removed from the home on March 24. Deputy Hespen testified that he took the children from their parents on March 24 pursuant to a court order directing him, through the county attorney's office, to take custody at once. The Supreme Court has stated that our statutes do not provide for a procedure where the juvenile court issues an ex parte order directing a sheriff to pick up a child, but that Neb. Rev. Stat. § 43–248 (Reissue 1993) authorizes any peace officer to take temporary custody of a juvenile who is endangered as defined in that statute, and therefore the issuance of such an unauthorized order was held not to be prejudicial. *In re Interest of S.S.L.*, 219 Neb. 911, 367 N.W.2d 710 (1985). However, as discussed below, the Supreme Court has directed a procedure that should be followed for ex parte temporary detention orders. See *In re Interest of R.G., supra.* In this case, it appears that neither procedure was followed.

▮ The matter is further complicated by the fact that the hearing of March 27 was not journalized, and the transcript does not show that the court made a trial docket note. Furthermore, the bill of exceptions shows that the judge did not orally order that the children remain in foster care with DSS, although this might be implied from the discussion of visitation and the accompanying order allowing visitation. The fact remains that with regard to county courts,

> [t]he time of rendition of a judgment or making of a final order is the time at which the action of the judge in announcing the judgment or final order is noted on the trial docket or, if the action is not noted on the trial docket, the time at which the journal entry of the action is filed.

Neb. Rev. Stat. § 25–2729(3) (Cum. Supp. 1994). " 'In the absence of a judgment or order finally disposing of a case, the Supreme Court has no authority or jurisdiction to act, and in the absence of such judgment or order the appeal will be dismissed. . . .' " *In re Interest of L.W.*, 241 Neb. 84, 95, 486 N.W.2d 486, 495 (1992) (quoting *Larsen v. Ralston Bank*, 236 Neb. 880, 464 N.W.2d 329 (1991)). This court recently held that when there is no oral pronouncement accompanied by a trial docket notation, or a filed journal entry, judgment has not

yet been rendered. *In re Interest of Teela H.*, 3 Neb. App. 604, 529 N.W.2d 134 (1995).

Unless the journal entry purporting to record a hearing of March 24 was in fact a journal entry of the March 27 hearing, there is no order of March 27. The ex parte order of March 24 would then be the only order in case No. A–95–439 depriving the parents of the custody of their children. We are therefore confronted with two possibilities. One, that the journal entry, dated March 24, 1995, and filed March 29, records a hearing on March 24, and that is the only order, or two, that the journal entry records the court's action after the March 27 hearing and thus is the effective order.

*Long–term Effect of March 24 Order.*

■ The order of March 24 by its terms does not purport to be a temporary order pending a further order after a hearing, but, rather, it purports to be an ex parte order for an unlimited duration. The meaning of a judgment is determined, as a matter of law, by its contents. *Kerndt v. Ronan*, 236 Neb. 26, 458 N.W.2d 466 (1990); *In re Interest of Teela H., supra.* Furthermore, this order was not modified by any later order.

> [T]he effect of the ex parte temporary detention order on [the mother's] interest is tempered by its short duration. It hinges continued custody in the department on further action by the State. The effect of the ex parte order on the mother's liberty interest is further tempered by the fact that the order plays no part in determining the propriety of continuing further temporary custody in the department until adjudication.

*In re Interest of R.G.*, 238 Neb. 405, 417, 470 N.W.2d 780, 789 (1991).

■ The process which is due in order that "the State may temporarily seize and place an endangered juvenile outside the parent's home pending the filing of a petition requesting continued placement of the juvenile until adjudication must be responsive to the parent's liberty interest while not eviscerating the State's parens patriae interest." *Id.* at 418, 470 N.W.2d at 790. In determining that an ex parte order was not appealable in *In re Interest of R.G., supra*, the Supreme Court observed that the order in that case was by its terms of limited duration,

8 judicial days. In this case, the order of March 24 does not by its terms purport to be limited in time. Obviously, an ex parte temporary detention order cannot be appealed, not because it was issued ex parte, but, rather, because such detention orders operate for only a short time. The order of March 24 is appealable because it is not an order which is by its terms limited in duration. Furthermore, on the record before this court, the ex parte order is still in effect and was not superseded by any other order, except the possible dismissal of the case by the trial court.

If there was a hearing on March 24, we are not supplied with any evidence that might have been adduced at that hearing. The Supreme Court has said:

[T]he better practice, and the practice which shall henceforth be followed, is that the information upon which the State seeks an ex parte temporary detention order be contained in the affidavit of one who has knowledge of the relevant facts and that such affidavit be presented to the juvenile court and be made a part of the record of the proceedings. In addition, the affected juvenile's parent shall be given prompt notice of the order.

*In re Interest of R.G.*, 238 Neb. at 419–20, 470 N.W.2d at 791.

The journal entry of March 24 refers to the sworn testimony of Deputy Hespen, but that testimony is not in the bill of exceptions, in spite of the fact that the praecipe for bill of exceptions expressly asks for all evidence presented at all hearings "from March 24, 1995, through the present date." We can only conclude that if he testified on March 24 in addition to March 27, his testimony was not preserved by the court reporter. Juvenile courts are courts of record, and a verbatim record of all proceedings is required. *In re Interest of D.M.B.*, 240 Neb. 349, 481 N.W.2d 905 (1992). The order of March 24, filed March 29, is appealable, but since no evidence was placed in the record, we must conclude that it must be reversed because it is not supported by any evidence.

*Sufficiency of Evidence for a March 27 Order.*

There is no journal entry in the transcript purporting to journalize the hearing of March 27. The journal entry dated March 24, 1995, shows that Deputy Hespen was sworn and

testified, and it contains a finding that "emergency removal from the parental home was necessary." That journal entry also sets a hearing for April 12, not March 27, and the order does not purport to be limited with respect to time in any fashion. These inconsistencies at least leave open the possibility that the journal entry of March 24, which was not filed until March 29, is really a journal entry of both hearings, or perhaps a misdated journal entry of the March 27 hearing. We will now analyze the record upon the assumption that the order is a journal entry of the hearing of March 27.

In *In re Interest of R.G.*, 238 Neb. 405, 470 N.W.2d 780 (1991), the Supreme Court noted that what saved the juvenile court's jurisdiction in that case was that the evidence adduced at a hearing held 14 days later supported what was done at the earlier hearing. We fear that is not the situation in this case. In fact, even when we consider the journal entry filed on March 29 to be a journal entry of the March 27 hearing, the record still does not support an order depriving the parents of their children pending adjudication. We say this because the evidence adduced at that hearing is multiple hearsay in form and ambiguous in content. The only witness for the State had no first hand knowledge. (It will be noted that the Supreme Court stated in *In re Interest of R.G., supra*, that the affiant shall be one who has knowledge of the relevant facts.)

The hearsay that Deputy Hespen related was the only evidence and is barely coherent. At most, it says that Cassandra indicated by gestures that her father had hit her. Such questions as Where? When? How much? How hard? Did it leave marks? Is the child prone to exaggerate? Where was the mother? are only a few that would naturally arise in trying to determine if these children should be removed from their home. The bill of exceptions contains practically no facts, and therefore this court and both parties found it necessary to use allegations as though they were facts in order to make the briefs and the opinion intelligible. The evidence does not show the names or ages of the children, the names of the parents of the children, where they lived, or any other information which would give the small amount of information imparted by Deputy Hespen some meaning.

There is no evidence supporting the court's findings, including what efforts, if any, were made to prevent placement outside of the home. The separate case regarding Zachary, No. A–95–391, is also before this court. While we may not use the information gleaned from that record to satisfy the void in this record, that information does lead us to conclude that some of the DSS people shown to be present by the transcript and bill of exceptions in case No. A–95–439 probably had sufficient information to establish a decent factual record and that evidence might exist which would justify the court's action.

The Supreme Court has held that at a preadjudication detention hearing, the State has the burden to prove by a preponderance of the evidence that placement out of the parents' home is necessary. *In re Interest of R.G., supra.* The evidence offered by the State in case No. A–95–439 establishes very little, and certainly does not establish facts, as required by Neb. Rev. Stat. § 43–254 (Reissue 1993):

> "If a juvenile has been removed from his or her parent, guardian, or custodian pursuant to subdivision (3) of section 43–248, the court may enter an order continuing detention or placement only upon a written determination that continuation of the juvenile in his or her home would be contrary to the welfare of such juvenile and that reasonable efforts were made, prior to placement, to prevent or eliminate the need for removal and to make it possible for the juvenile to return to his or her home."

*In re Interest of Cherita W., ante* p. 287, 291, 541 N.W.2d 677, 679–80 (1996) (quoting § 43–254). See *In re Interest of R.G., supra.*

We conclude that the record of March 27 would not support an order depriving the parents of their children pending adjudication, even if we found there was a valid order issued by the juvenile court as a result of that hearing.

*Mootness.*

The appeal in case No. A–95–439 was perfected on April 24 and placed upon the call to be argued before this court in December. On November 21, the State filed a motion for dismissal of the case in the juvenile court, and the judge signed

a dismissal order on the same date. The State then moved this court to dismiss the appeal as moot.

We realize that an action in juvenile court may be dismissed by a county attorney at any time prior to trial without leave of the court. *In re Interest of Moore*, 186 Neb. 67, 180 N.W.2d 917 (1970). That rule, however, does not consider whether the State may dismiss an action in the juvenile court while that case is pending in this court. Neb. Rev. Stat. § 43-2,106 (Cum. Supp. 1994) provides, in significant part:

> When a juvenile court proceeding has been instituted before a county court sitting as a juvenile court, the original jurisdiction of the county court shall continue until the final disposition thereof and no appeal shall stay the enforcement of any order entered in the county court . . . . The county court shall continue to exercise supervision over the juvenile until a hearing is had in the appellate court and the appellate court enters an order making other disposition. . . . Upon determination of the appeal, the appellate court shall remand the case to the county court for further proceedings consistent with the determination of the appellate court.

We are unable to find any case law interpreting the meaning of the phrase "original jurisdiction of the county court shall continue." However, this phrase does not imply the power to dismiss the case. The phrase "no appeal shall stay the enforcement of any order" likewise throws no light upon the effect a motion for dismissal by the State might have on an appeal by the parents. However, the record before us shows that the State did not intend to return the children to their parents. The State maintains that it is keeping custody of the children on the basis of the termination of parental rights proceeding. However, no statute authorizes the State to detain children without an order adjudicating the children under § 43-247 or a termination of parental rights under Neb. Rev. Stat. § 43-292 (Reissue 1993), except for those statutes which provide for temporary detention pending an adjudication under § 43-247. The statutes that provide for termination do not provide for the State to keep children from their parents pending a termination

hearing except by the same statutory steps necessary to keep them pending adjudication under § 43-247.

*Orders of November 14 and 21.*

██ We can find no jurisdictional basis for the juvenile court to have issued the order filed November 14 or the order dated November 21, 1995, both of which place custody of the children with DSS, as shown in case No. A-95-1369. Since these orders were issued without jurisdiction, we summarily dismiss the appeal in that case for lack of jurisdiction. See Neb. Ct. R. of Prac. 7A(2) (rev. 1992). When an appeal is dismissed because the lower court lacked jurisdiction to enter the order appealed from, an appellate court lacks jurisdiction, but may nevertheless enter an order canceling the order issued by a lower court without jurisdiction. *WBE Co. v. Papio-Missouri River Nat. Resources Dist.*, 247 Neb. 522, 529 N.W.2d 21 (1995). See *State ex rel. Grape v. Zach*, 247 Neb. 29, 524 N.W.2d 788 (1994). We therefore direct the trial court to cancel the order filed November 14 and the order dated November 21, 1995, insofar as they purport to place custody of the children with DSS.

We note that any question presented by the appeal in case No. A-95-1368 is not presented in such a fashion that it may be disposed of summarily, and it will therefore continue to pend until disposed of by other means.

██ With regard to the State's claim that the juvenile court dismissal makes the appeal in case No. A-95-439 moot:

A case becomes moot when issues initially presented in litigation cease to exist or the litigants lack a legally cognizable interest in the outcome. [Citations omitted.] A moot case is one which seeks to determine a question which does not rest upon existing facts or rights, in which the issues presented are no longer alive.

*State v. McCormick*, 246 Neb. 890, 892-93, 523 N.W.2d 697, 698 (1994).

"There is an exception to the general rule regarding moot questions which should be examined. That exception applies to cases involving matters of public interest. . . . The public interest exception to the rule precluding consid-

eration of issues on appeal due to mootness requires a consideration of the public or private nature of the question presented, desirability of an authoritative adjudication for future guidance of public officials, and the likelihood of future recurrence of the same or a similar problem."

*Bamford v. Upper Republican Nat. Resources Dist.*, 245 Neb. 299, 304–05, 512 N.W.2d 642, 647 (1994) (quoting *Koenig v. Southeast Community College*, 231 Neb. 923, 438 N.W.2d 791 (1989)).

In the first place, the question presented is not moot because notwithstanding the supposed dismissal, DSS still keeps custody of the children, and at the time of the dismissal neither the State nor the court intended to return the children to their parents. The attempt to dismiss the original case and at the same time keep custody without statutory authorization as part of a termination proceeding appears to this court to be an attempt to deny the parents a right of appeal.

It also appears that there is a great likelihood that similar errors will occur in the future and that it is desirable to have an opinion for future guidance. We therefore conclude that the appeal is not moot.

*Advisement of Rights.*

In *In re Interest of R.R.*, 239 Neb. 250, 475 N.W.2d 518 (1991), the Supreme Court held that the trial court did not violate due process when it proceeded with a preadjudication hearing without the presence of counsel for the mother. However, in that case the court noted that "the trial court twice informed the mother of her right to appointed counsel, but the mother did not request an appointed attorney." *Id.* at 256, 475 N.W.2d at 522. The court also noted that the mother was partly at fault because she had received notice on February 17 of a March 1 hearing and did not contact a lawyer until the night before the hearing. In case No. A–95–439, Gail stated that she and Robert needed counsel, and Robert stated that their attorney wanted a $5,000 retainer and that they were unable to afford a proper defense. When the judge learned that their income was $1,753 per month, he stated: "The purpose of looking at

financial affidavit — it is based upon the federal guidelines for eligibility. Based upon the income — not necessarily based upon all the expenses involved, the Court would find based upon that that's presented, that you're not qualified for court-appointed counsel." Robert then stated it would be very difficult for them to obtain an attorney because they had no available cash to give a retainer. The judge stated that did not mean the parents qualified for a court-appointed attorney. The parents have pro bono counsel handling this appeal, and we learn from the termination proceeding, case No. A-95-1369, that the court has now appointed counsel for the parents.

■■ With regard to review hearings, the Supreme Court has stated: "We hold that a parent in a juvenile court case has the right to appointed counsel if unable to hire a lawyer. § 43-279.01(1)(b)." *In re Interest of N.M. and J.M.*, 240 Neb. 690, 697, 484 N.W.2d 77, 82 (1992). Neb. Rev. Stat. § 43-279.01 (Reissue 1993) provides in significant part that when the petition alleges the juvenile is within § 43-247(3)(a), the court shall inform the parties of the "(b) Right to engage counsel of their choice at their own expense or to have counsel appointed if unable to afford to hire a lawyer." With regard to the duty of the court to advise the parents of such a child of his or her rights, this court has said:

> There is, however, nothing in the record to show that B.S. was informed of her right to testify and to compel other witnesses to attend and testify, her right to a speedy adjudication hearing, or her right to appeal and have a transcript or record of the proceedings for such purpose as required by § 43-279.01(1)(e), (f), and (g). The statute clearly mandates that B.S. be informed of each of these rights without regard to whether she is represented by counsel. The failure of the court to advise B.S. as required by § 43-279.01 necessitates that the order in this case be reversed and the cause remanded for a new adjudication hearing.

*In re Interest of A.D.S and A.D.S.*, 2 Neb. App. 469, 472, 511 N.W.2d 208, 210-11 (1994).

Since this matter is only a temporary detention hearing, the failure to appoint an attorney might not be sufficient to cause a

reversal of the orders appealed from. However, not only did the judge fail to advise the parents as directed by § 43–279.01, the judge's statement to them at the conclusion of the guardian ad litem's examination of Deputy Hespen was likely to be interpreted by a layperson as a denial of any right to proceed pro se.

*Miscellaneous.*

Under different headings, we have ruled upon the parents' assignments of error Nos. 2, 3, 4, and 6. The act alleged as the first assignment of error, that the judge signed a summons removing the children from the home, amounted to no more than entering an ex parte order that is truly of limited duration, and therefore that act is not appealable.

In the fifth assignment of error, the parents allege that the petition in case No. A–95–439 is vague and ambiguous, and we agree that it is. However, this appeal involves a preliminary matter, and this question was not presented to the trial court. We therefore decline to consider the effect of such a vague petition.

## CONCLUSION

We therefore reverse the judgment and remand the cause in case No. A–95–439 with direction to return the children to their parents unless the State shall establish the facts necessary to deprive the parents of custody of their children within 8 days of the filing of the mandate in this case.

In case No. A–95–1369, we dismiss the appeal for lack of jurisdiction of the order appealed from. However, we also direct the trial court to cancel its orders of November 14 and 21, insofar as they affect the custody of the children, because the court lacked jurisdiction to enter them. The State's motions to dismiss for lack of an appealable order or because of mootness are denied.

JUDGMENT IN NO. A–95–439 REVERSED, AND CAUSE REMANDED WITH DIRECTION.

APPEAL IN NO. A–95–1369 DISMISSED, AND CAUSE REMANDED WITH DIRECTION.