IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

IN RE INTEREST OF NYX B.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE INTEREST OF NYX B., A CHILD UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLEE,

V.

JUSTIN B., APPELLANT, AND SARAH M., APPELLEE.

Filed January 14, 2025.    No. A-24-464.

Appeal from the Separate Juvenile Court of Douglas County: CANDICE J. NOVAK, Judge. Affirmed.

Thomas C. Riley, Douglas County Public Defender, and Nicole J. Tegtmeier for appellant.

Cristina Fackler, Deputy Douglas County Attorney, for appellee State of Nebraska.

RIEDMANN, Chief Judge, and PIRTLE and ARTERBURN, Judges.

PIRTLE, Judge.

## INTRODUCTION

The separate juvenile court of Douglas County determined that Justin B.'s daughter, Nyx B., was within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2016). On appeal, Justin assigns that the court erred in denying his motion in limine, making certain evidentiary rulings at the adjudication hearing, and finding that there was sufficient evidence to prove Nyx was at a risk of harm. For the reasons that follow, we affirm.

## BACKGROUND

On October 4, 2023, the Nebraska Department of Health and Human Services (DHHS) received an intake alleging that Justin was sexually abusing his 6-year-old daughter, Nyx. The following day, Nyx participated in a forensic interview and medical exam. During the interview,

- 1 -

she disclosed that she had touched Justin's "private parts." She stated that this occurred while she and Justin were alone in his old apartment. She explained that Justin was clothed and lying on the couch in the living room when he pulled down his pants far enough to reveal his penis. She said that after he prompted her, she touched his penis with her fingers. She stated that Justin told her to not tell her mother because he would get in trouble.

On October 30, 2023, while on a call with a DHHS family service specialist, Nyx's mother, Sarah M., expressed her belief that the sexual abuse did not occur. Sarah reiterated this belief during another call on November 6. During the later conversation, the family service specialist heard Nyx crying and whimpering while Sarah told her to talk to the specialist. After the family service specialist told Sarah that her behavior was inappropriate, Sarah told her to "fuck off," "she didn't give a fuck," and that she could come pick up Nyx.

That same day, November 6, 2023, the State filed a supplemental petition alleging Nyx was within the meaning of § 43-247(3)(a) because:

> (A) Justin [B. had] sexually assaulted said juvenile.
> (B) Justin [B. had] subjected said juvenile to inappropriate physical touching and/or sexual contact.
> (C) Justin [B. had] failed to provide said juvenile with proper parental care, support, supervision, and/or protection.
> (D) Due to the above allegations, said juvenile is at risk for harm.

The next day, Nyx was removed from her mother's home and placed in the care of her grandmother. Approximately a week later, on November 15, she was placed with her aunt.

On November 14, 2023, during a follow-up medical examination at Project Harmony, Nyx informed the nurse practitioner that she had lied. The nurse practitioner's report recounts the conversation:

> I asked her what she calls her butt by pointing and she replied "butt". I asked her if someone has ever done touching to her butt and she replied "grandma, sometimes I have accidents and she helps clean me up. I was lying to people. I said I touched my dad's privates but I didn't". I asked to clarify if she did touching to her dad's private and she replied "no, I lied."

On February 8, 2024, Justin filed a motion in limine. In this motion, Justin requested the court exclude any testimony from Amanda Kuszak, the forensic interviewer who conducted Nyx's first interview; Mary Ellwanger, the nurse practitioner who conducted Nyx's first medical examination; and Emma Wright, the nurse practitioner who conducted Nyx's pre-interview. Justin alleged these testimonies were inadmissible because they included inadmissible hearsay evidence from Nyx and did not qualify under Neb. Rev. Stat. § 27-803(4) (Cum. Supp. 2022), the hearsay exception for statements made for medical diagnosis or treatment. The motion in limine also requested the court exclude the video recording of Nyx's forensic interview and questioned the court's ability to determine her competency when she was never called to testify. Lastly, the motion asserted that Justin's right to due process was being violated because he was being denied an opportunity to confront and cross-examine Nyx.

An adjudication hearing was held on February 12, 2024. Before the hearing began, the court addressed Justin's motion in limine. In response to Justin's assertions, the State argued that Wright, Kuszak, and Ellwanger's testimonies fell under § 27-803(4) because Nyx's statements were made for the purpose of medical diagnosis or treatment. Additionally, the State contended that Justin did not have a right to confrontation at the adjudication hearing because it was a civil proceeding with a primary focus of protecting Nyx's interests.

The court ultimately denied Justin's motion in limine. It first stated that the motion was untimely because it was filed "effectively about 24 hours before the trial was to begin." But the court also reasoned that the arguments raised in the motion could be handled by objections made during the hearing.

At the hearing, the State called, Wright, Kuszak, Ellwanger, and Leah Jerusik. Justin called Kristina Johnson and Caitlynne Munchrath.

Wright is a nurse practitioner that works at Project Harmony. She was involved in the pre-interview meeting with the multidisciplinary team assigned to Nyx's case. She was also one of the first people to meet Nyx prior to her forensic interview. She stated that she and Kuszak introduced themselves to Nyx in the waiting room and explained that a medical examination was going to be performed once the interview ended. However, Wright's testimony was short because another nurse practitioner conducted Nyx's medical examination.

Kuszak works at Project Harmony and was the forensic interviewer who interviewed Nyx. Kuszak stated that Nyx was brought to Project Harmony due to allegations of sexual abuse. At the beginning of the interview, she told Nyx that telling the truth was important and asked her if she promised to tell the truth. Kuszak said that Nyx nodded her head in response, which corresponds with the recording of the interview. Kuszak stated that she understood Nyx's nod to mean that she understood what she was saying.

Kuszak then discussed Nyx's disclosure that she had touched her father's penis. She recounted Nyx's description that Justin had pulled his pants down slightly while lying on the couch and that Nyx had touched his penis with her finger. The State then offered the video recording of the forensic interview as exhibit 9, which Justin objected to on hearsay and confrontation grounds. The court overruled these objections and received the exhibit.

Kuszak next discussed various reasons why a child may recant allegations of sexual abuse. She stated that sometimes children are directly influenced to take back their allegations while sometimes they are more indirectly motivated to recant. She explained that children can still care about the perpetrator and not like the various consequences their allegations have on their relationship with that person.

Kuszak also explained how forensic interviewers work closely with the medical examiners at Project Harmony because the child's interview can help inform what type of medical treatment they require. Specifically, she stated that the child's interview can help the providers determine if the child needs mental health support or referrals to specialists. Accordingly, after completing Nyx's interview, Kuszak spoke with the nurse practitioner who performed Nyx's medical examination.

Ellwanger is the nurse practitioner who conducted Nyx's medical examination after the forensic interview. Her testimony began by outlining the process used for forensic interviews and medical exams. She stated that the forensic interview occurs first, followed by a discussion

- 3 -

between the interviewer and medical examiner. Ellwanger stated this discussion is necessary so the examiner can be told what the child disclosed. The examiner then asks the child about their medical history, conducts a physical examination, and discusses the reasons for the child's visit. Ellwanger explained that during this process, if sexual abuse is disclosed, the examiner will ask about the perpetrator. She stated that the identity of the perpetrator is medically relevant because it helps them identify any safety risks and recognize what tests may be necessary.

Ellwanger then discussed Nyx's medical examination. After asking Nyx about her disclosures, Nyx repeated her claim that she had touched her "daddy's private parts" with her finger. She said this only happened once, and that she had not used any other part of her body to touch him. Because Nyx did not allege any physical harm, Ellwanger did not conduct any further physical testing. Instead, Ellwanger recommended Nyx participate in therapy to help with any potential mental health problems.

Jerusik worked for DHHS as a child and family services specialist. In this role, she was a point of contact for Sarah after Nyx's interview and medical examination. She stated that she first spoke to Sarah on October 5, 2023, at Project Harmony. The next time Jerusik spoke with Sarah was on October 30. During this conversation, Sarah told Jerusik that she no longer believed Nyx was sexually abused. Because of this belief, Sarah indicated that she no longer intended to keep Nyx away from Justin.

Jerusik next spoke to Sarah over the phone on November 6, 2023. During this phone call, Sarah reiterated her belief that the sexual abuse did not occur and attempted to have Nyx speak to Jerusik. Jerusik stated that she heard "a child whimpering and crying" and told Sarah that she was being inappropriate. At that point, Sarah told her to "fuck off and that she didn't give a fuck, and that [Jerusik] could come take Nyx away." Jerusik's testimony concluded with her stating that Nyx would be at a risk of harm if she was returned to her parents' custody.

Johnson is a nurse practitioner at Project Harmony and conducted Nyx's second medical examination on November 14, 2023. During this examination, Nyx told Johnson that she lied in her previous interview. Specifically, Johnson's report states:

> I asked her what she calls her butt by pointing and she replied "butt". I asked her if someone has ever done touching to her butt and she replied "grandma, sometimes I have accidents and she helps clean me up. I was lying to people. I said I touched my dad's privates but I didn't". I asked to clarify if she did touching to her dad's private and she replied "no, I lied."

However, at the adjudication hearing, Johnson was asked about the voluntariness of Nyx's recantation. The following colloquy occurred:

> [The State]: Ms. Johnson, you didn't actually ask Miss Nyx about previous disclosures, did you?
> [Johnson]: No
> [The State]: In fact, [Nyx] said she lied to you – she said she lied right after saying that grandma sometimes helps her wipe her butt after accidents; isn't that correct?
> [Johnson]: Correct.
> [The State]: So would you say that her statement that "I was lying to people" was not related to your previous questions of her?

[Johnson]: Yes.

Munchrath, Nyx's aunt, then testified. She explained that Nyx was currently placed with her and had been living with her since November 15, 2023.

On May 22, 2024, the court issued an order finding that the State proved each of its allegations by a preponderance of the evidence. Accordingly, the court determined that Nyx was within the meaning of § 43-247(3)(a) and that remaining in the custody of DHHS was in her best interests.

Justin now appeals.

## ASSIGNMENTS OF ERROR

Restated and reordered, Justin assigns that the juvenile court erred by (1) denying his motion in limine and receiving the forensic interview recording and Wright, Kuszak, and Ellwanger's testimonies into evidence over his hearsay objections; (2) violating his due process right of confrontation as well as his right to confrontation under Neb. Rev. Stat. § 43-279.01 (Reissue 2016), by denying his motion in limine and receiving the forensic interview recording and Wright, Kuszak, and Ellwanger's testimonies into evidence; (3) permitting Nyx's hearsay statements into evidence because the court was unable to determine her credibility and competency; and (4) determining there was sufficient evidence to prove that Nyx was at a risk of harm.

## STANDARD OF REVIEW

Several legal principles control our de novo review of proceedings in the juvenile court. In a de novo review, an appellate court disregards inadmissible or improper evidence. *In re Interest of Xandria P.*, 311 Neb. 591, 973 N.W.2d 692 (2022). An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings. *In re Interest of Gunner B.*, 312 Neb. 697, 980 N.W.2d 863 (2022). However, when the evidence is in conflict, the appellate court may give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other. *Id*. Regarding a question of law, an appellate court has an obligation to reach a conclusion independent of the conclusion of the trial court. *In re Interest of Cassandra L. & Trevor L.*, 4 Neb. App. 333, 543 N.W.2d 199 (1996).

## ANALYSIS

### HEARSAY OBJECTIONS

Justin first assigns the court erred by denying his motion in limine and ultimately receiving the video recording of Nyx's forensic interview and the testimonies of Wright, Kuszak, and Ellwanger into evidence over his hearsay objections. He essentially asserts the video recording and testimonies involved Nyx's out-of-court statements and thus, constituted inadmissible hearsay without an exception. The State contends Nyx's statements were made for the purpose of medical diagnosis or treatment and fall under the exception for hearsay codified in § 27-803(4).

Section 27-803 of the Nebraska rules of evidence provides:

Subject to the provisions of § 27-403 the following are not excluded by the hearsay rule, even though the declarant is available as a witness:

. . . .

(4) Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

Section 27-803(4) is based on the notion that a person seeking medical attention will give a truthful account of the history and current status of his or her condition in order to ensure proper treatment. *In re Interest of Xandria P., supra*. Statements made by a child victim of sexual abuse to a forensic interviewer in the chain of medical care may be admissible under § 27-803(4), even though the interview has the partial purpose of assisting law enforcement's investigation of the crimes. *In re Interest of Xandria P., supra.* Statements having a dual medical and investigatory purpose are admissible under § 27-803(4), only if the proponent of the statements demonstrates that (1) the declarant's purpose in making the statements was to assist in the provision of medical diagnosis or treatment and (2) the statements were of a nature reasonably pertinent to medical diagnosis or treatment by a medical professional. *In re Interest of Xandria P., supra*. The fundamental inquiry when considering a declarant's intent is whether the statement was made in legitimate and reasonable contemplation of medical diagnosis or treatment. *Id.* The appropriate state of mind of the declarant may be reasonably inferred from the circumstances; such a determination is necessarily fact specific. *Id.* Under § 27-803(4), the admissibility of a victim's statements in a recording is not distinct from the admissibility of the statements themselves. *In re Interest of Xandria P.*, 311 Neb. 591, 973 N.W.2d 692 (2022).

In *In re Interest of Xandria P., supra*, the Nebraska Supreme Court determined that a recording of a child's forensic interview was admissible under § 27-803(4) although the child did not testify at trial. The court stated the recording was admissible because the forensic interviewer testified at trial that the interview occurred at a medical facility, the interview was conducted for a medical purpose and could be used for purposes of diagnosis and treatment, and that the child was able to talk to medical staff after the interview if she had any concerns about her body or health. *In re Interest of Xandria P., supra*. The court concluded that this testimony, and the video recording itself, laid the necessary foundation to admit the recording under § 27-803(4). *In re Interest of Xandria P., supra*.

The present case involves similar testimony. Wright, Kuszak, and Ellwanger all discussed how the medical examination rooms are next to the forensic interview rooms. Kuszak explained the rooms are at the same location, so the children can go to one place to receive services. She also mentioned that law enforcement is not present during the interviews or medical examinations.

All three witnesses also discussed how the forensic interviewers and medical examiners discuss the child's disclosures after their interview, but before the medical examination. Kuszak stated that this discussion helps the examiner gather the child's medical history and helps inform the child's treatment needs and whether referrals are necessary. Ellwanger similarly provided that this conversation helps her gather the child's history so they can form a treatment plan. She articulated that the information gained from the forensic interviewer can influence her recommendations for therapy or help her determine if further physical tests are necessary.

- 6 -

Because these testimonies demonstrate that Nyx's statements during her forensic interview were, in part, made for the purpose of medical diagnosis or treatment, we determine the juvenile court did not err in overruling Justin's motion in limine and objections at trial to such evidence. While the forensic interview had an investigatory purpose, it also served as a means to procure salient information for Nyx's medical treatment. Therefore, we determine that Nyx's out-of-court statements were made to assist in the provision of medical diagnosis or treatment and were reasonably pertinent to her medical diagnosis or treatment. As such, they fall under § 27-803(4)'s exception to the hearsay rule.

Additionally, to the extent that Justin's assignment takes issue with Nyx identifying him as the perpetrator, we determine he is unable to raise the issue on appeal because he failed to object to certain parts of Kuszak's testimony that identified him as Nyx's abuser. Failure to make a timely objection waives the right to assert prejudicial error on appeal. *State v. Rush*, 317 Neb. 622, 11 N.W.3d 394, *modified on denial of rehearing* 317 Neb. 917, 12 N.W.3d 787. During Kuszak's testimony, the following colloquy occurred:

Q. During your interview with Nyx did she disclose any sexual abuse?

A. Yes.

Q. And who was the perpetrator?

A. Her father.

Q. What did Nyx tell you about her father, Justin?

[Sarah's attorney]: Objection, hearsay.

[Justin's attorney]: And I would join in that objection, and I would also add confrontation.

THE COURT: The objections are noted, they are overruled.

[The State]: You may answer.

THE WITNESS: She disclosed that she had to touch her dad's private.

Q. (By [the State]) Did she -- did she elaborate on how the touching was done?

A. Yes.

Q. What did she say?

A. She said that her dad pulled down his pants slightly and she touched his private with her finger and he told her not to tell her mom or he would get in trouble.

Q. Did she say whether or not she touched her father's naked privates or over clothes? Did she say -- did she tell you that?

A. She didn't use the word naked, however she, when asked about her father's clothes, she said his pants were down slightly. And when asked if he was wearing anything underneath his pants, she said no.

Q. Did Nyx tell you where this incident happened?

A. She said it happened at dad --

[Justin's attorney]: I just want to ensure that I have a continuing objection to -- on the hearsay to her testimony at this point, on hearsay and confrontation.

THE COURT: Moving from this part forward, yes.

Because Kuszak had already testified about Nyx's identification of Justin as her abuser prior to the objections, and before Justin's attorney requested a continuing objection, Justin is unable to raise the issue on appeal.

However, even if Justin was able to raise the issue on appeal, Nyx's identification of him as her abuser also falls under § 27-803(4)'s exception to the hearsay rule. The Supreme Court has explicitly stated:

> While statements relating to fault are generally not admissible under rule 803([4]), when a child is sexually abused, and especially when the child has a familial relationship with the child's abuser, the identity of the perpetrator is reasonably pertinent to diagnosis and treatment, because the victim cannot be effectively treated if sent right back into the abuser's clutches.

*State v. Vigil*, 283 Neb. 129, 810 N.W.2d 687 (2012). Here, Nyx identified her father as her abuser. Because her allegations involved a familial relationship, we determine her identification of Justin as her perpetrator also falls within § 27-803(4)'s exception to the hearsay rule. Accordingly, we determine the court did not err in overruling Justin's motion in limine and hearsay objections at trial.

CONFRONTATION CLAUSE OBJECTIONS

Justin next assigns the court erred by denying his motion in limine and ultimately receiving the video recording of Nyx's forensic interview and the testimonies of Wright, Kuszak, and Ellwanger into evidence over his Confrontation Clause objections. While he concedes that the Confrontation Clause does not apply to adjudication proceedings in juvenile court, he essentially contends that the State's failure to call Nyx as a witness violated his broader right to due process. He argues his right to due process was violated because the court had an obligation to adopt certain procedures to protect his rights and should have held a hearing where the State adduced evidence as to why it did not call Nyx to testify. We understand Justin's argument to basically assert that although he did not have a right of confrontation under the Confrontation Clause in the underlying proceeding, his inability to confront Nyx violated his right to due process.

Because this is a juvenile proceeding and not a criminal case, the heightened standards of the Confrontation Clause are not applicable. *In re Interest of Brian B. et al.*, 268 Neb. 870, 689 N.W.2d 184 (2004). Instead, the proper analysis is, without Nyx testifying, whether Justin's due process rights were violated. See *id.* Thus, the question here is whether Justin's due process rights were violated during the adjudication hearing when the court overruled his motion in limine and objections to the witnesses' testimonies and forensic interview recording.

We determine Justin's right to due process was not violated by the introduction of Nyx's forensic interview and out-of-court statements without Nyx testifying. Similar to how Justin did not have a right to confront Nyx under the Confrontation Clause, he did not have a right to confront her under his right to due process.

In *State v. Vaught*, 268 Neb. 316, 682 N.W.2d 284 (2004), the Supreme Court considered whether a child's out-of-court statements to a doctor for the purpose of medical diagnosis or treatment implicated the protections afforded by the Confrontation Clause. In this case, the doctor who conducted the medical examination on the child testified about the child's disclosures of

sexual abuse and identification of the defendant as her abuser. *Id.* The court first found that these disclosures were admissible pursuant to rule 803(4), which at that time was codified as rule 803(3), because the child clearly understood that a medical examination was being performed.

The court then addressed whether the doctor's testimony violated the defendant's right to confrontation under the then recent U.S. Supreme Court ruling in *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). In *Crawford*, the U.S. Supreme Court distinguished between testimonial statements, which are made primarily for prosecutorial purposes, and nontestimonial statements, which are made for nonprosecutorial purposes. See *id.* The Court reasoned that where testimonial statements are at issue, the Confrontation Clause demands that such hearsay statements be admitted at trial only if the declarant is unavailable and there had been a prior opportunity for cross-examination. See *id.* But the Court did not impose the same requirements to introduce nontestimonial hearsay statements at trial.

In applying the *Crawford* holding, the Nebraska Supreme Court in *State v. Vaught, supra*, held that the child's statements were nontestimonial because they were made for the purposes of medical diagnosis or treatment, not for prosecutorial purposes. *Id.* And because the statements were nontestimonial, the court determined that the Confrontation Clause was not implicated. This holding now stands for a broader proposition that the Confrontation Clause does not apply when out-of-court statements are made for the purpose of medical diagnosis or treatment. See *id.*

In the present matter, although Justin generally concedes that the Confrontation Clause did not apply at the adjudication hearing, he argues that his right to due process afforded him some protections related to the introduction of Nyx's out-of-court statements. Like the holding in *Vaught*, we determine that Nyx's out-of-court statements were made for the purpose of medical diagnosis or treatment. Wright and Kuszak's testimony clearly indicated that Nyx was informed that she was undergoing a medical examination and she even asked multiple questions about what to expect. Therefore, even if the Confrontation Clause applied to the underlying proceedings, it would not have afforded Justin the right to confront Nyx and cross-examine her nontestimonial statements. In the same manner, we determine that Justin was not afforded those rights under his right to due process. Stated differently, we conclude that it would be inconsistent to determine that Justin's right to due process afforded the same protections offered by the Confrontation Clause when the Confrontation Clause did not apply to Nyx's nontestimonial statements. With this finding that Justin had no right to confront Nyx under the Confrontation Clause or his right to due process, we determine the court had no obligation to implement procedures to determine why the State did not call Nyx as a witness. Accordingly, we determine the court did not err in overruling Justin's motion in limine and Confrontation Clause objections at trial.

COMPETENCY AND CREDIBILITY

Justin next assigns the court erred in permitting Nyx's hearsay statements into evidence because it was unable to determine her credibility and competency. He asserts that the court had an obligation to determine whether Nyx was sufficiently mature enough to accurately remember events, correctly articulate what she remembered, and to appreciate the importance of telling the truth. He contends that because Nyx was never called as a witness, the court was unable to make these necessary determinations.

We determine that this assignment is misplaced. It was not necessary for the court to determine Nyx's competency because she never testified as a witness. See Neb. Rev. Stat. § 27-601 (Cum. Supp. 2022) (indicating that, generally, competency is only required of witnesses). Further, the court did not have to evaluate her credibility because the hearsay exceptions within the Nebraska Rules of Evidence impose an assumption of credibility for her statements. For instance, rule 803(4) is based on the notion that a person seeking medical attention will give a truthful account of the history and current status of his or her condition in order to ensure proper treatment. *In re Interest of Xandria P.*, 311 Neb. 591, 973 N.W.2d 692 (2022). If we were to go against this notion by requiring courts evaluate the credibility of declarants when their statements fall within a codified exception to the hearsay rule, we would render the exceptions meaningless. In such a world, there would be no need for the hearsay exceptions because the declarants would still have to testify for the court to judge their credibility. Therefore, we determine the court did not have to determine Nyx's competency because she did not testify as a witness, and it did not have to determine her credibility because the underlying rationales of the hearsay exceptions presume a truthful account of what occurred.

RISK OF HARM

Justin next assigns the court erred in determining there was sufficient evidence that Nyx was at a risk of harm. Justin's assignment hinges on Nyx's recantation during her second medical examination. He generally argues that because Nyx admitted to lying about her allegations, there was insufficient evidence for the court to determine she was at a risk of harm.

To obtain jurisdiction over a juvenile at the adjudication stage, the court's only concern is whether the conditions in which the juvenile presently finds himself or herself fit within the asserted subsection of § 43-247. *In re Interest of Lilly S. & Vincent S.*, 298 Neb. 306, 903 N.W.2d 651 (2017). Section 43-247(3)(a) outlines the basis for the juvenile court's jurisdiction and grants exclusive jurisdiction over any juvenile "who lacks proper parental care by reason of the fault or habits of his or her parent, guardian, or custodian." *In re Interest of Lilly S. & Vincent S.*, 298 Neb. at 315, 903 N.W.2d at 660. While the State need not prove that the child has actually suffered physical harm, Nebraska case law is clear that at a minimum, the State must establish that without intervention, there is a definite risk of future harm. *Id.* The State must prove such allegations by a preponderance of the evidence. *Id.*

We determine the juvenile court did not err in finding there was sufficient evidence to prove that Nyx was at a risk of harm because there was sufficient evidence to show that Justin sexually abused her. During her forensic interview, Nyx provided significant details of Justin's conduct that a child of her age would be unlikely to fabricate. Nyx recalled that the abuse occurred in the living room of Justin's old apartment, that the abuse occurred while he was lying on the couch with his pants on, that she was standing next to the couch when Justin slightly pulled his pants down to expose his penis, and that she touched his penis with her finger. Further, she recalled that Justin told her not to tell her mother or else he would get in trouble. Nyx's allegations were also consistent across her forensic interview and first medical examination. Specifically, Kuszak and Ellwanger both recalled that Nyx said she touched Justin's penis with her finger and that it was his idea.

- 10 -

Further, although Nyx eventually claimed to have lied about her allegations, we note the juvenile court accepted her initial disclosures over her recantations. When the evidence is in conflict, the appellate court may give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other. *In re Interest of Gunner B.*, 312 Neb. 697, 980 N.W.2d 863 (2022). More so, the testimony of Johnson brought into question the credibility of Nyx's recantation, given that it was a voluntary statement, not in response to a question posed to her. Regardless of the accuracy of this claim, we give weight to the fact that the juvenile court heard testimony regarding Nyx's allegations and alleged recantation and gave more credence to the allegations.

For these reasons, we determine the court did not err in finding that there was sufficient evidence to conclude that Nyx was at a risk of future harm.

CONCLUSION

We determine the juvenile court did not err in overruling Justin's motion in limine over his hearsay and Confrontation Clause objections, and overruling the same objections to Wright, Kuszak, and Ellwanger's testimonies at trial. We also determine that Justin's assignment of error concerning the court's inability to judge Nyx's competency and credibility fails because Nyx was never called as a witness and the hearsay rules presume a credible articulation of what occurred. Lastly, we determine the court did not err in finding that there was sufficient evidence to conclude that Nyx was at a risk of future harm.

AFFIRMED.