ARTHUR E. WALTER ET AL., APPELLEES, v. W. A. GILLAN ET AL., APPELLANTS.

FILED JULY 19, 1935. No. 29299.

*John J. Ledwith, I. D. Beynon* and *Willis R. Hecht,* for appellants.

*John L. Mattox* and *Minor & Minor, contra.*

Heard before ROSE, GOOD, EBERLY, DAY, PAINE and CARTER, JJ., and BLACKLEDGE, District Judge.

BLACKLEDGE, District Judge.

This is an appeal from the district court for Lancaster county wherein the action was commenced by the plaintiffs, the owners of the improvements on, and lease of, a section of school land in Buffalo county. The petition prayed for cancelation of an assignment and transfer of such property made to defendant Gillan and alleged to have been fraudulently procured by him with the assis-

tance of defendants Barney and Lunger. The petition also prayed for the recovery of damages.

It is suggested in appellants' brief that the action was for both rescission and damages, which remedies are inconsistent and cannot both be followed. *Rasmussen v. Hungerford Potato Growers Ass'n*, 111 Neb. 58. The correctness of the proposition may be conceded, but no objection on this ground appears to have been made in the trial court, it is not within the assignments of error in this court, the parties proceeded to trial and judgment as in equity and the case will be so considered here.

The decree of the trial court provided for cancelation of the instruments executed by plaintiffs in connection with the transaction, and that upon payment by plaintiffs to defendant Gillan, within 60 days, of $501.10 in reimbursement for a like amount paid by him to the commissioner of public lands and buildings, and the delivery of their note for $1,011.20, to be substituted for Gillan's note with the commissioner, and representing delayed payments on the school land lease, the new lease procured by Gillan be by him assigned to plaintiffs and Gillan divested of any further right or title thereto. The decree further provided that if defendant Gillan should fail to do the things so required of him, or if he should transfer the lease to any innocent holder, then the plaintiffs should have judgment against him in the sum of $2,500, in lieu of any and all other rights decreed to them. This decree was entered March 27, 1934.

Thereupon defendants duly filed a motion for new trial which was denied April 21, 1934. May 11, 1934, defendants executed and deposited with the clerk of the court an assignment by Gillan to plaintiffs for the school land lease, with notice that it was so done in lieu of a supersedeas undertaking pursuant to section 20-1917, Comp. St. 1929, and the same bore the indorsement and approval of both the trial judge and the clerk; objections thereto being overruled. This was followed by notice of appeal and the filing of the usual cost bond.

Meantime, upon motion and affidavit filed by plaintiffs May 23, 1934, showing was made to the effect that they had on May 14 and 21, within the time provided by the court, tendered to defendant Gillan the $501.10 and offered to do the things required of them by the decree, but that the said defendant refused to accept the same or assign the lease. Thereupon plaintiffs applied for rendition of the alternative judgment of $2,500 in their favor provided for in the decree, which application was granted and entry made of such judgment June 2, 1934. This was followed by amended notice of appeal by defendants June 22, 1934, and an additional bond of $5,000.

It is now contended that the trial court was without authority to grant or render the second or supplemental judgment for $2,500 on June 2, and with this contention we agree. The statute (Comp. St. 1929, sec. 20-1917) provides for the filing of such an instrument instead of the bond prescribed by the court. This instrument had received the approval of the trial judge as a supersedeas, no contention is made that it was not sufficient for that purpose, no attempt was made to have it vacated, but with that assignment resting in the files the plaintiffs successfully sought to have the later refusal of defendants to execute and deliver another assignment to them made the basis of a money judgment. We know of no justification for such procedure. The decree of March 27, 1934, had been duly superseded and the power of the district court to proceed in the case was suspended. *Carroll v. Polfus,* 98 Neb. 657. The judgment entered June 2, 1934, for $2,500 is therefore vacated and set aside.

This leaves the case to be considered upon the original issues of fraud. Herein the situation shown by the record without material dispute is: Plaintiffs were record owners of a school land lease issued on behalf of the state covering all of section 16, township 10 north, range 14, in Buffalo county, were in actual occupancy thereof, and were owners of improvements thereon consisting of buildings, fences, windmill, etc., to the value estimated at from $1,500

to $4,000. Their lease purchase had been made from the Gilcrest Lumber Company in January, 1926, on which a cash payment of $1,000 had been made and notes given for a balance of $5,500 of the purchase price, for security of which the Gilcrest company held an assignment of the lease. All the notes were past due and unpaid except two payments indorsed on the one $500 note, and coupons detached from the others indicating interest payments up to September, 1928, to have been made. Payments of $230.40 due each January and July to the state were delinquent for the years 1931, 1932 and 1933 in the amount of those payments. The transactions complained of here took place in the last of June and first part of July, 1933. The crops of that and previous two years had gone with the general drought conditions of the locality. Walter had been notified of the delinquency and prospective cancelation of his lease rights by the land commissioner's office. He had taken this up with the Gilcrest company by correspondence and was trying to find some way to hold on. His lease expired by its terms January 1, 1933. He had certain statutory rights to a renewal of his lease if he could make up the delinquencies. He suggested in his letter of January 22, 1933, to Mr. Robinson of the Gilcrest company the possibility of obtaining assistance from the regional loan board to try to put it in good standing and get a renewal of his lease. He wrote August 24, 1933, in a letter introduced by defendants, "I supposed we had two years to pay that school taxes in as the clipping you sent me said, so when Mr. Barney came to me saying our time expired at midnight I was surprised." He had learned of the "school land moratorium" (Laws 1933, ch. 143), one of the many emergency measures, state and national, enacted during the time for relief of drought sufferers, and was trying to find means to secure the application of its benefits to this school land holding. The act provided that on the refinancing being made July 1, 1933, the note to be given for delinquencies should mature December 31, 1934.

Beset by these conditions he was approached by Gillan

and Barney. Gillan had provided himself with a list of delinquent leases from the office of the land commissioner and was looking for an attractive investment. June 30 Gillan saw Barney. July 1 Barney saw Walter. Gillan impressed on Barney that the matter must be closed that day. They learned that the Walter lease was up with the Gilcrest company on an assignment as collateral to a debt of $5,500, and that the Gilcrest company was bankrupt. On telegraphic communication Gillan and Barney arranged the purchase of the Gilcrest company's notes of $5,500 and assignment of the lease, all for the sum of $100. Gillan left the money with Barney, $50 in cash and $50 in check. He knew the assignment he could get from the Gilcrest company was one not recorded and given as security only. Gillan then went to the county treasurer, told him he had bought the Walter lease and gave him a check for $501.10 intended to cover the necessary cash payment to take advantage of the moratorium. The treasurer told him he could not give him a receipt until he brought in the assignment. It was approximately July 10 that Barney received the Gilcrest company's notes and assignment. He telegraphed Gillan, who came to Kearney, and on the following day the documents in question were executed, the assignment by Walter having been antedated to June 30, and all certified by Barney as notary.

The foregoing recited facts appear in the record without substantial dispute. There was an agreement on this July 11 for the holding as in escrow of certain of the documents until further understanding was had between the parties. Plaintiffs testify that it was as to their ultimate rights to hold on or whether they were unqualifiedly out and subject to dispossession after midnight of July 1. Defendants testify that it had to do only with the question whether Gillan should receive a crop rental share for the current year. It is certain that the lease assignment was delivered at once to defendant Gillan, who then completed his transactions with the county treasurer and proceeded to Lincoln and secured to himself a new state lease for the premises.

The notes, farm lease and bill of sale were still held by Barney.

The plaintiffs claim and testify to statements and representations concerning their rights; that they were to be sold out in ten days; that the lease assignment was also to be held and not delivered; that the son Orville would lose his place rented of defendant Lunger's brother if he did not sign up, and other matters of an urgent and coercive nature. This was denied by defendants. The trial judge had the advantage of both seeing and hearing the witnesses as the testimony was given—a material factor in determining the value of the testimony. He evidently placed more reliance on the testimony on plaintiffs' behalf. A careful reading of the record is convincing that he was right in so doing. Whatever else may be open to argument it is certain that Walter still held possession, not only of the improvements that were on the land and for which no compensation was provided, but the one essential thing without the transfer of which the plans, payments and other acts of the defendant Gillan would avail him nothing —the owner's title to the school land lease. To secure this the full and final pressure was brought to bear, and under the distress of drought and financial conditions, strengthened by sharp business practice, wrongful representations and a species of coercion, the plaintiffs were overreached and defrauded of their leasehold rights. The decree of the trial court was right in undertaking to restore the same.

To remove any possibility of resulting injustice, it is enough if defendant Gillan be reimbursed for his actual outlay which will redound to the benefit of plaintiffs in connection with the leasehold estate. This was the sum of $501.10 originally paid to the county treasurer, and the amount of the note, $1,011.20, given in the land commissioner's office for delinquencies under the act of 1933, and $100 paid on account of the Gilcrest company's notes. The Gilcrest company appears to have parted with these notes voluntarily, but, under the circumstances of the case, a court of equity cannot sanction the holding or application

of them in behalf of defendant Gillan for more than the amount of his actual investment therein. He should be well satisfied to receive a return of that. This item of $100, having been omitted from the provisions of the decree of the trial court, and the time of maturity of the $1,011.20 as fixed by the act of 1933 having expired, requires a modification of that part of the decree to the effect that plaintiffs be given a reasonable time for redemption of said premises by the payment of said sums with accruing simple interest from the time of the payments, respectively, at 5 per cent. into court to and for the benefit of defendant Gillan and in satisfaction of the debt to the state if not heretofore paid, and of any additional accrued leasehold payments due to the state, whereupon they shall be entitled to an assignment from Gillan to plaintiffs, Arthur E. and Orville L. Walter, of the lease executed in the name of defendant Gillan, the decree to stand as such assignment if not otherwise made, and the title as owners of the leasehold be fixed and quieted in said plaintiffs as against all other parties to the suit or any person claiming through any of them.

The court fixes December 31, 1935, as such reasonable time, and that part of the decree as so modified is affirmed. In the event of failure of plaintiffs to so redeem within the time fixed, their rights thereto shall become at once concluded and the title to the leasehold shall thereupon be confirmed in the defendant Gillan.

In accordance with the views here expressed, the judgment of the trial court is reversed in part, modified and affirmed in part, and remanded, with directions to enter a decree in accordance herewith.

AFFIRMED IN PART, AND REVERSED IN PART.