In re Application of United Mineral Products Company.
United Mineral Products Company, appellee, v. Nebraska Railroads of Western Trunk Lines Committee, appellant.
131 N. W. 2d 604

Filed December 4, 1964. No. 35744.

Mason, Knudsen, Berkheimer & Endacott, for appellant.

Nelson, Harding & Acklie and Richard A. Peterson, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, and BROWER, JJ., and ROBERT L. FLORY and ROBERT L. SMITH, District Judges.

BROWER, J.

This action was commenced by a motion of the United Mineral Products Company, hereinafter referred to as the appellee, filed on July 9, 1963, with the Nebraska State Railway Commission, referred to hereinafter as the commission, for an order fixing the amount due from the Nebraska Railroads of Western Trunk Lines Committee, hereinafter referred to as the appellant, under a supersedeas bond given by the appellant when it appealed to this court from a previous order of the commission granting a reduction of freight rates to the appellee.

The proceeding in which the supersedeas bond had been

given had resulted in the commission making an order on June 19, 1962, fixing railroad joint line rates on limestone from Weeping Water, Nebraska, to Ord, Allen, and Hastings, Nebraska, for a 3-months' period beginning July 1, 1962, and ending September 30, 1962, unless sooner changed, canceled, or extended. The appellant Nebraska Railroads of Western Trunk Lines Committee which consists of the Missouri Pacific Railroad Company, Union Pacific Railroad Company, Chicago, Burlington & Quincy Railroad Company, Chicago & North Western Railway Company, and Chicago, Rock Island & Pacific Railroad Company, appealed the rate-fixing order of the commission to this court and filed the supersedeas bond in question approved by the commission in the amount of $6,000. The amount due under this bond is the question in dispute. On May 3, 1963, this court affirmed the rate order of the commission, its opinion being set out in United Mineral Products Co. v. Nebraska Railroads, 175 Neb. 285, 121 N. W. 2d 492. In that opinion the fact that the rate fixed was for the temporary period hitherto set out was not mentioned as that fact was not necessary for this court's decision at that time.

There are no disputed facts in this proceeding. During the pendency of the appeal, the appellee shipped limestone to Ord, Nebraska, at the old, higher rates which the appellee paid. Shipments were not made to Allen or Hastings. The difference in the new and the old rate which had existed before the order appealed from was 82 cents a ton. The new rate reduced the old in that amount. It is stipulated that the shipments of the appellee up to and including September 30, 1962, resulted in an overpayment of $1,782.14. It is further stipulated that other shipments to Ord were made by the appellee between the 30th day of September 1962, and November 2, 1962, and that the overpayment if the later shipments are to be also taken into account is $2,678.63. The only dispute between the parties is the difference of $896.49 between these figures.

The appellant filed an objection to the appellee's motion stating that it was willing to pay the overcharges in said amount of $1,782.14 on the shipments made only up to and including September 30, 1962, the date of the expiration of the temporary rate, but contended the shipments subsequent to that time were not properly chargeable to it.

On October 16, 1963, the commission found the new lower rate applied after September 30, 1962, and that in addition to the overcharge of $1,782.14 for shipments to September 30, 1962, there was the further overcharge of $896.49 owed by the appellant to appellee because of shipments made in October and November 1962, making a total due of $2,678.63. The commission determined that the latter amount was due under the supersedeas bond. A rehearing having been denied, the matter has been brought to this court by the appellant's appeal.

On December 30, 1963, the appellant paid the said sum of $1,782.14 to appellee. A receipt for this payment was filed in the proceeding, a condition of which is that the payment and acceptance was not a waiver of the claims or rights of either party with regard to the applicable rate for such shipments made in October or November 1962.

The supersedeas bond given in the present case was that provided for in section 75-408, R. R. S. 1943, which reads as follows: "In no case shall the filing of a supersedeas bond suspend the putting in force or operation of any decision, regulation, rate, schedule or order of the State Railway Commission of any nature whatsoever, unless such supersedeas bond is conditioned and in sufficient amount, to be approved by the commission, to insure the prompt refunding, by the appealing common carrier to the parties entitled thereto, of all charges which such common carrier may collect or receive pending the appeal in excess of those fixed or authorized by the final decision in the cause by the

Supreme Court." The bond was conditioned in accordance with this statute.

The general rule is: "The amount of damages recoverable in a proceeding on an appeal or supersedeas bond depends primarily upon the conditions of the bond, construed in conjunction with the governing statutes." 5 Am. Jur. 2d, Appeal and Error, § 1058, p. 472. See, also, 5B C. J. S., Appeal & Error, § 2072, p. 707.

In Farmers Union Livestock Commission v. Union P. R.R. Co., 135 Neb. 689, 283 N. W. 498, this court held: "The railway commission has the power to regulate the rates and services of, and to exercise a general control over, all railroads engaged in the transportation of freight or passengers within the state.

"Rates and charges duly established by the railway commission, until altered or set aside, have the effect of a legislative enactment." The same rule was applied in Shields Co. v. Chicago, B. & Q. R.R. Co., 133 Neb. 722, 276 N. W. 925.

The text in 13 C. J. S., Carriers, § 297, p. 678, states: "In determining the reasonableness of a freight charge, the season of the year during which the rates are in force may be considered. Thus a carrier may properly charge lower rates on coal in the summer months in order to keep its coal cars and coal crew employed during that season of the year, provided such rates are offered in good faith to all persons on equal terms."

"On an appeal to the Supreme Court from an order of the Nebraska State Railway Commission, administrative or legislative in character, the only questions to be determined are whether the commission acted within the scope of its authority and whether the order complained of is reasonable and not arbitrarily made." Preisendorf Transp., Inc. v. Herman Bros., Inc., 169 Neb. 693, 100 N. W. 2d 865.

An appeal proceeding divests the Nebraska State Railway Commission of jurisdiction only as to matters under review and does not preclude it from proceeding

as to collateral and independent matters. 4 Am. Jur. 2d, Appeal and Error, § 355, p. 834. This rule has hitherto been applied by this court in Publix Cars, Inc. v. Yellow Cab & Baggage Co., 130 Neb. 413, 265 N. W. 240. In that case it was held that the decision of the commission under consideration was in no way dependent on the outcome of a previous appeal which was then pending before this court in the case of Publix Cars, Inc. v. Yellow Cab & Baggage Co., 130 Neb. 401, 265 N. W. 234, but the later action of the commission concerned an independent question.

We will next consider the facts in this case and apply to them the rules of law we have cited. The appellee made application to the commission in which it stated that substantial quantities of lime dust would be required at projects near the named destination points of Ord, Allen, and Hastings during the period from July 1, 1962, through August. It alleged the projects would be awarded by competetive bids. It set out that the rate from the appellee's plant at Weeping Water to the named terminals discriminated against the appellee when compared to the rate from Ashland, Nebraska, from which point lime dust was shipped by its competitors to those points. Appellee requested a reduction in the rate for a period of 90 days from July 1, 1962, unless sooner changed, canceled, or extended. This temporary rate was all that the appellee requested. At the conclusion of the hearing this temporary rate was all that the findings and order of the commission granted. The appeal to this court from the order granting the temporary rate by the commission was all that was appealed and was all that was before this court. By stipulation it is shown that the prior rate was $4.30 per ton and that the temporary rate was $3.48 per ton, the difference being the 82 cents as hitherto stated. The order of the commission did not purport to make any change in the rate subsequent to the 30th day of September 1962.

The appellee cites certain cases including Walter v. Gillan, 129 Neb. 514, 262 N. W. 33, and Carroll v. Polfus, 98 Neb. 657, 154 N. W. 213, to the effect that where a supersedeas bond has been given, the power of the district court to proceed in that case is suspended.

It also cites Moritz v. State Railway Commission, 147 Neb. 400, 23 N. W. 2d 545, to the effect that the provisions for an appeal from the commission to the Supreme Court is similar to appeals from the district court provided for in section 25-1912, R. S. Supp., 1963. It contends when the notice of appeal and the docket fee were timely filed, jurisdiction of the Supreme Court over the case was complete and a supersedeas bond being filed, further orders would have to await our decision.

The appellee, therefore, contends that the commission had no power to fix new rates after the Supreme Court acquired jurisdiction in United Mineral Products Co. v. Nebraska Railroads, *supra,* and that consequently the new rates would continue until the Supreme Court had acted. The appellee, however, had misconceived the existing situation which resulted by reason of the appeal. All that this court had before it was a temporary rate to September 30, 1962. Aside from the temporary change in the rate, the old rate still existed and again went into effect after the 30th of September. Although the temporary order could not be changed by the commission pending the appeal, the appellee could have asked the commission to put into effect new or reduced rates after September 30, or the commission by appropriate procedure might have acted to do so on its own motion.

On July 9, 1963, the appellee filed its motion for an order fixing the amount due upon the bond which was not acted upon by the commission until October 16, 1963. It is apparent that nothing had been done by the commission to change the rate after September 30, 1962. The old rates applied until altered or set aside. Shields Co. v. Chicago, B. & Q. R.R. Co., *supra.*

The appellee further contends that when this court affirmed the commission's order granting the temporary rate it held the previous rates unreasonably discriminatory and preferential and that its action established that fact and the new rates continued by reason thereof. This argument is fallacious in that whatever this court held was with reference to the granting by the commission of the temporary rate. That was all that was before the court at that time. It is the province of the commission and not the court to fix or change rates. The court merely upheld the commission in entering its temporary order holding that under the evidence its action was not arbitrary or unreasonable.

The commission's action in finding the amount due under the supersedeas bond had the effect of changing the rates retroactively which it is not authorized to do. Farmers Union Livestock Commission v. Union P. R.R. Co., *supra*.

It follows that the order of the commission under the circumstances was not sustained by the evidence and because thereof its action was arbitrary and without its jurisdiction. The order of the commission in holding the appellant liable upon its supersedeas bond for overpayments during the months of October and November 1962, must be and is reversed.

REVERSED.