IN RE INTEREST OF JOSHUA M. ET AL., CHILDREN UNDER 18
YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, V. LONA F., APPELLANT.

548 N.W.2d 348

Filed May 21, 1996.   Nos. A–94–1239, A–94–1240, A–95–761, A–95–762.

Julie A. Frank, of Frank & Gryva, for appellant.

Margaret A. Badura, Deputy Douglas County Attorney, and Christine P. Costantakos, guardian ad litem, for appellee.

MILLER–LERMAN, Chief Judge, and IRWIN and MUES, Judges.

MUES, Judge.

## I. INTRODUCTION

These appeals involve five children: Gloria F., born May 5, 1985; Tabitha M., born August 13, 1987; T.J. M., born February 21, 1990; Amanda M., born October 27, 1991; and Joshua M., born September 6, 1993. The children's biological mother, Lona F., appeals from four separate orders regarding these children. Case No. A–94–1239 is an appeal from a preadjudication detention order entered by a separate juvenile court on behalf of Joshua. Case No. A–94–1240 involves an appeal from an order of the juvenile court removing T.J. and Amanda from Lona's home. Cases Nos. A–95–761 and A–95–762 involve appeals from two separately filed juvenile court proceedings collectively terminating Lona's parental rights

to all of said children. All four matters were consolidated for appeal.

## II. STATEMENT OF CASE

Lona gave birth to Gloria when Lona was age 13. Gloria's father, Walter R., was approximately 36 years old at the time. At age 15, Lona began living with Thomas M. and Barbara C. The three lived as one family, and Thomas fathered nine children between the two women, whom he referred to as his "shack jobs." Other than Gloria, Thomas is the biological father of all of the children involved herein. Lona describes her relationship with Thomas as "very abusive and . . . different." Lona required hospital treatment as the result of Thomas' abuse on at least one occasion.

The initial petition regarding Gloria, Tabitha, T.J., and Amanda was filed on March 26, 1993, at which time the court ordered that immediate custody of the children be retained in the Department of Social Services (the Department). On June 8, Thomas was charged with two counts of first degree sexual assault on a child. These charges alleged that Thomas had sexually assaulted Gloria and a second child fathered by Thomas and born to Barbara.

By order filed August 23, 1993, Gloria, Tabitha, T.J., and Amanda were adjudicated to be within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Reissue 1993), on the basis that Lona had failed to provide a healthy home environment. Joshua had not been born at this time. This order further retained temporary custody of the children with the Department for appropriate care and placement. By dispositional order dated October 5, 1993, the children were ordered to remain in the temporary custody of the Department and Lona was ordered to comply with a plan designed to correct the conditions leading to their adjudication. Among other things, she was ordered to avoid association with Thomas.

Lona was again ordered to refrain from any contact with Thomas by order of the court dated November 16, 1993. Following a review hearing on April 22, 1994, the court found it was not in the children's best interests to be returned to Lona's home and continued their temporary custody in the Department.

Thomas was found guilty by a jury on both counts of sexual assault on a child, and on September 23, 1994, was sentenced to 8 to 12 years' imprisonment on each count, to be served consecutively. These convictions were affirmed by this court in an unpublished opinion on October 24, 1995.

Following a review hearing on October 19, 1994, the court found that T.J. and Amanda should remain in the custody of the Department for appropriate care and placement *to include the home of Lona* and that Gloria and Tabitha should remain in foster care. At some point prior to the entering of this order, T.J. and Amanda had already been returned to Lona's home; however, their custody remained in the Department. The record does not disclose what precipitated the children's return to Lona's care.

The order of October 19, 1994, further ordered that Lona

[n]ot engage in any contact or communication or visitation in ANY FORM WHATSOEVER, (including but not limited to telephon[e] or letter) with Thomas . . . and Lona [F.] shall not permit, allow, or in any manner facilitate any visitation, contact or communication in ANY FORM WHATSOEVER (including but not limited to telephone or letters) between Thomas . . . father . . . and [any] of the above–named minor children . . . .

On December 6, 1994, the Department filed a motion for immediate temporary custody regarding T.J. and Amanda. By order dated December 6, 1994, the court found that pending further hearing, the need for placement and detention existed for the protection of T.J. and Amanda. The court entered a separate order for immediate temporary custody regarding Joshua on December 6. The Douglas County sheriff was therefore ordered to pick up the three children.

Also on December 6, a motion to terminate parental rights was filed in the pending juvenile proceedings regarding Gloria, Tabitha, T.J., and Amanda. In the motion, it was asserted that the children had been adjudicated within § 43–247(3)(a) and that the children were within Neb. Rev. Stat. § 43–292(6) (Reissue 1993) because, among other things, Lona had knowingly and intentionally defied court orders forbidding any contact and/or communication with Thomas. This motion was

subsequently amended to include that Gloria and Tabitha were also within the meaning of § 43-292(7).

A petition for adjudication and termination of parental rights regarding Joshua was also filed on December 6 in a separate proceeding pertaining only to him. This petition alleged that Joshua was within the meaning of §§ 43-247(3)(a) and 43-292(6). This petition was later amended to allege that Joshua was also within the meaning of § 43-292(2).

Following a detention hearing, the court by order dated December 16, 1994, found it would be in the best interests of Gloria, Tabitha, T.J., and Amanda to place them in the temporary custody of the Department for appropriate care and placement until further order of the court, subject to supervised visitation with Lona. A like order was entered on this same date in the proceeding regarding Joshua. Lona filed her notice to appeal both of these orders on December 23. The appeal of this order relating to Gloria, Tabitha, T.J., and Amanda is case No. A-94-1240, and the appeal of the order relative to Joshua is case No. A-94-1239. The guardian ad litem's motions for summary dismissal of cases Nos. A-94-1239 and A-94-1240 on the ground that the orders appealed from were not final, and thus nonappealable, were overruled by this court on March 21, 1995.

Despite these pending appeals, the juvenile court proceeded with termination proceedings in both of the cases below, overruling Lona's objection to jurisdiction. Lona's objection was based solely on the fact that appeals in cases Nos. A-94-1239 and A-94-1240 were then pending before this court. On June 28, 1995, the separate juvenile court adjudicated Joshua as being within § 43-247(3)(a) and, further, terminated Lona's parental rights to him. A separate order was entered on this same date terminating Lona's parental rights to her remaining four children. Lona filed a notice to appeal these termination orders on July 11. The appeal of the order terminating Lona's parental rights to Gloria, Tabitha, T.J., and Amanda is case No. A-95-762, and the appeal of the order relating to Joshua is case No. A-95-761. The State's motion to dismiss cases Nos. A-94-1239 and A-94-1240 on the ground

that the issues raised therein were moot was overruled by this court without prejudice.

Additional facts will be set forth as required.

### III. ASSIGNMENTS OF ERROR

Lona asserts 23 assignments of error in her combined appeals. Given our findings with regard to jurisdiction, and after consolidating four of her assigned errors into one, we need only address her assertions that the court erred in (1) finding that it had jurisdiction to terminate Lona's parental rights despite her pending appeals and (2) finding a sufficient basis for removing T.J. and Amanda from her home and detaining Joshua prior to his adjudication where no evidence of harm or evidence of a specific risk of harm to the children was shown.

### IV. STANDARD OF REVIEW

■ Whether a question is raised by the parties concerning jurisdiction of a lower court or tribunal, it is not only within the power but the duty of an appellate court to determine whether it has jurisdiction over the matter before it. *In re Interest of Alex T. et al.*, 248 Neb. 899, 540 N.W.2d 310 (1995); *Jones v. State*, 248 Neb. 158, 532 N.W.2d 636 (1995). Where a jurisdictional question does not involve a factual dispute, determination of the issue is a matter of law which requires an appellate court to reach a conclusion independent from that of the inferior court. *Id.*

■ An appeal to the Nebraska Court of Appeals or the Nebraska Supreme Court from a juvenile court is reviewed de novo on the record. In that review, findings of fact made by the juvenile court may be accorded weight by an appellate court because the juvenile court observed the parties and the witnesses and made findings as a result thereof. *In re Interest of J.T.B. and H.J.T.*, 245 Neb. 624, 514 N.W.2d 635 (1994).

### V. ANALYSIS

We first address the jurisdictional issues presented by these appeals. Specifically, we must determine whether the juvenile court had jurisdiction to hear and determine the motions to terminate Lona's parental rights when her appeals in cases Nos. A–94–1239 and A–94–1240, regarding the orders removing T.J.

and Amanda from her home and detaining Joshua, had already been perfected. If the juvenile court lacked jurisdiction, then we similarly do not have jurisdiction to entertain the appeals in cases Nos. A-95-761 and A-95-762. We must begin by determining whether Lona's appeals in cases Nos. A-94-1239 and A-94-1240 were proper.

### 1. FINALITY OF DECEMBER 16, 1994, ORDERS

By order dated December 6, 1994, the separate juvenile court ordered the immediate removal of Joshua from Lona's home for appropriate placement by the Department. By order dated December 16, 1994, the juvenile court entered a preadjudication order retaining the temporary custody of Joshua in the Department. Prior to this time, the Department had not taken any steps regarding the care of Joshua. Also by order dated December 16, 1994, the juvenile court retained temporary custody of Gloria, Tabitha, T.J., and Amanda in the Department for appropriate care and placement. As previously set forth, custody of these four children was initially placed in the Department on March 26, 1993, at which time the children were removed from Lona's home. Custody of all four children at all times relevant hereto has always remained in the Department; however, at some point prior to the December 16 order, T.J. and Amanda had been returned to Lona's home. Lona retained physical custody of T.J. and Amanda until the court's order of December 6, 1994, ordering the sheriff to remove T.J. and Amanda from Lona's home for placement by the Department. The order of December 16 effectively continued this removal of T.J. and Amanda from Lona's home.

The State asserts that the December 16 orders were nonfinal, nonappealable orders. A court order is appealable only if it is a final order. Neb. Rev. Stat. § 25-2728 (Supp. 1995). This court is without jurisdiction to entertain appeals from nonfinal orders. See, e.g., *In re Interest of R.G.*, 238 Neb. 405, 470 N.W.2d 780 (1991). We will first address this issue as it relates to Joshua.

### (a) Joshua

Neb. Rev. Stat. § 43-253 (Cum. Supp. 1994) applies to juveniles taken into temporary custody by an officer of the

peace without a warrant or court order. See, also, Neb. Rev. Stat. §§ 43–248 and 43–250 (Reissue 1993). Neb. Rev. Stat. § 43–254 (Reissue 1993), however, provides for placement or detention "[p]ending the adjudication of *any* case, if it appears that the need for placement or further detention exists . . . ." (Emphasis supplied.) As Joshua was taken into temporary custody pursuant to a court order issued on December 6, 1994, he comes within the ambit of § 43–254. See, e.g., *Ackerman v. Nanfito*, 1 Neb. App. 601, 510 N.W.2d 333 (1993).

■ A petition alleging that Joshua was within the meaning of § 43–247(3)(a) as well as § 43–292(6) was also filed on December 6. Following a hearing, the court, by order dated December 16, 1994, found that temporary custody of Joshua should be placed in the Department for appropriate care and placement. This order was clearly appealable. As stated by the court in *In re Interest of R.R.*, 239 Neb. 250, 252–53, 475 N.W.2d 518, 520 (1991):

> Although an ex parte temporary detention order keeping a juvenile's custody from his or her parent for a short period of time is not final, one entered under § 43–247(3)(a) and Neb. Rev. Stat. § 43–254 (Reissue 1988), after a hearing which continues to keep a juvenile's custody from the parent pending an adjudication hearing to determine whether the juvenile is neglected, is final and thus appealable. See *In re Interest of R.G.*, [*supra*].

See, also, *In re Interest of Cassandra L. & Trevor L., ante* p. 333, 543 N.W.2d 199 (1996) (ex parte order of detention for unlimited duration also appealable).

As of December 16, 1994, Joshua had not been adjudicated a juvenile within the meaning of § 43–247. The remaining children at issue herein, however, were adjudicated children within the meaning of § 43–247(3)(a) prior to December 16. Therefore, a different analysis is required on the issue of finality as it pertains to them.

### (b) Gloria, Tabitha, T.J., and Amanda

As in the case of Joshua, an order for temporary custody regarding T.J. and Amanda was also entered on December 6, 1994. Again, following a "detention" hearing on December 15,

the court by order dated December 16, 1994, ordered that custody of T.J. and Amanda as well as Gloria and Tabitha should be placed in the Department for appropriate care and placement. Unlike Joshua, however, the December 16 order as it pertains to these four children was not a preadjudication detention order as these children were adjudicated to be within § 43-247(3)(a) on August 23, 1993. Thus, the clear rule set forth in *In re Interest of R.R., supra,* is not applicable.

■ Although referred to as a "detention" hearing and a "detention" order, we view the December 16 postadjudication order entered in this proceeding as more akin to a dispositional order. Once a juvenile has been adjudicated to be within § 43-247, the court may enter a dispositional order as set forth in Neb. Rev. Stat. §§ 43-283 through 43-2,101 (Reissue 1993 & Cum. Supp. 1994). See, e.g., *In re Interest of C.G. and G.G.T.,* 221 Neb. 409, 377 N.W.2d 529 (1985). An order determining where a juvenile will be placed is a dispositional order because it involves a judicial determination concerning a juvenile's relationship to his or her parents made following an adjudication. See *In re Interest of R.G.,* 238 Neb. 405, 470 N.W.2d 780 (1991). Dispositional orders of a juvenile court are final, appealable orders. *In re Interest of R.A. and V.A.,* 225 Neb. 157, 403 N.W.2d 357 (1987), *overruled on other grounds, State v. Jacob,* 242 Neb. 176, 494 N.W.2d 109 (1993).

The State, however, argues that the December 16 order is a mere "change in placement" pursuant to § 43-285(3), from which an appeal is improper. The State cites no authority in support of this proposition. Contrary to the State's position, this court has previously regarded a change in placement pursuant to a juvenile court's approval of a Department plan to be a final, appealable order. See, e.g., *In re Interest of John T., ante* p. 79, 538 N.W.2d 761 (1995). In that case, the juvenile's guardian ad litem appealed from a decision transferring the juvenile from one foster home to another.

We are aware that § 43-285(3) provides that one may seek review of a placement change by a juvenile review panel in the manner set forth in § 43-287.04. However, the Nebraska Supreme Court has determined that the expedited review by a juvenile review panel, as provided for in § 43-287.04, is

available only when the court's order implements a different "plan" than that proposed by the Department and there exists a belief that the court–ordered "plan" is not in the juvenile's best interests. See *In re Interest of M.J.B.*, 242 Neb. 671, 496 N.W.2d 495 (1993). Therefore, treating this as a "change in placement" and assuming that the court's order removing T.J. and Amanda from their mother's home a second time was consistent with the Department's "plan," as it was pursuant to the Department's motion for temporary custody, a review by the juvenile review panel was not available to Lona.

■ Even if the order at issue was viewed as a "continued detention" order, our conclusion regarding its appealability is unchanged. As we stated above, initial detention orders, entered after a hearing which continues to keep a juvenile's custody from his or her parents pending adjudication, are appealable. The law recognizes that a parent has a significant interest in raising his or her children. See, *In re Interest of R.R.*, 239 Neb. 250, 475 N.W.2d 518 (1991); *In re Interest of R.G., supra.* See, also, *In re Interest of Cassandra L. & Trevor L., ante* p. 333, 543 N.W.2d 199 (1996). "[A] parent has a liberty interest in raising her or his child, a concept which encompasses the child's custody, care, and control." *In re Interest of R.G.*, 238 Neb. at 416, 470 N.W.2d at 789. Although the December 16 order here was not an *initial* order, its effect is the same in that T.J. and Amanda were removed from Lona's care and physical custody.

■ We recognize that grounds for appeal from final orders not appealed from are waived. See, *In re Interest of C.D.C.*, 235 Neb. 496, 455 N.W.2d 801 (1990) (where neither parent appealed from adjudication order, they may not later question existence of facts upon which juvenile court asserted jurisdiction over juvenile); *In re Interest of L.B., A.B., and A.T.*, 235 Neb. 134, 454 N.W.2d 285 (1990); *In re Interest of M.B. and J.B.*, 233 Neb. 368, 445 N.W.2d 618 (1989). Lona did not appeal from the initial orders entered in this case, which removed the four children from her care. If a subsequent order is not new, but merely a continuation of a previous order, it does not extend the time for appeal. See, e.g., *In re Interest of Zachary L., ante* p. 324, 543 N.W.2d 211 (1996).

In *In re Interest of Zachary L.*, this court found the appeal from an order to be untimely where the order appealed from imposed no new requirements from previous orders which had not been timely appealed from. Unlike the order in *In re Interest of Zachary L.*, the December 16 order here differs substantially from the previous court order of October 19, 1994, wherein the juvenile court found that regarding T.J. and Amanda, appropriate care and placement included the home of Lona. Obviously, the December 16 order removing said children from Lona's home imposed a "new requirement" that T.J. and Amanda no longer be placed in the home of Lona. Therefore, the order at issue is not a "continuation" of the previous order of detention as it pertained to T.J. and Amanda. Rather, it changed the intervening court order which had altered the previous out-of-home placement of these two children and had returned them to Lona's home. Under these circumstances, the removal affected a substantial right no less than the initial removal order which was clearly appealable under *In re Interest of R.R., supra.*

Therefore, regardless of the label given this order, it is final and appealable. Thus, the December 16, 1994, orders entered regarding all of Lona's children were final, appealable orders.

## 2. JURISDICTION OVER TERMINATION PROCEEDINGS

In the proceedings below, which resulted in orders terminating Lona's parental rights to all five of her children and which resulted in the appeals in cases Nos. A–95–761 and A–95–762, Lona unsuccessfully asserted the well-established premise that once an appeal has been perfected to an appellate court, the trial court is divested of its jurisdiction to hear a case involving the same matter between the same parties. See, *WBE Co. v. Papio–Missouri River Nat. Resources Dist.*, 247 Neb. 522, 529 N.W.2d 21 (1995); *Swain Constr. v. Ready Mixed Concrete Co., ante* p. 316, 542 N.W.2d 706 (1996). Obviously, it was Lona's contention below that the pendency of the appeals discussed above, cases Nos. A–94–1239 and A–94–1240, deprived the juvenile court of jurisdiction in both matters to continue with termination proceedings. Having concluded that we have jurisdiction over the appeals in cases Nos. A–94–1239

and A–94–1240, which were perfected on December 23, 1994, we can now address this issue.

### 3. CONTINUING JURISDICTION

■ The State contends that there is statutory authority for continuing jurisdiction in the juvenile court, notwithstanding the pendency of an appeal. Our research discloses no statutory provision specifically defining the extent of a separate juvenile court's jurisdiction pending appeals of its final orders. Neb. Rev. Stat. § 43–2,106 (Cum. Supp. 1994) addresses the topic with regard to appeals from orders of county courts sitting as juvenile courts; however, similar language is absent from the statutory counterpart addressing appeals from separate juvenile courts. See Neb. Rev. Stat. § 43–2,106.01 (Cum. Supp. 1994). The State directs us to § 43–295, which generally provides a juvenile court with continuing jurisdiction over a juvenile and empowers the court to "order a change in the custody or care of any such juvenile if at any time it is made to appear to the court that it would be for the best interests of the juvenile to make such change." Section 43–295 is a statutory analog to Neb. Rev. Stat. § 42–351 (Reissue 1993), which authorizes a district court, in dissolution proceedings, to exercise jurisdiction regarding minor children "to provide for such orders regarding custody, visitation, or support or other appropriate orders in aid of the appeal process." See *In re Interest of L.D. et al.*, 224 Neb. 249, 398 N.W.2d 91 (1986). See, also, *Nimmer v. Nimmer*, 203 Neb. 503, 279 N.W.2d 156 (1979) (decree of dissolution insofar as minor children are concerned is never final).

■ While we agree that a juvenile court retains limited authority over children within its jurisdiction pending appeal, we do not agree that § 43–295 authorizes the action taken by the juvenile court here. In Joshua's case, it was only *after* the appeal from his detention order, case No. A–94–1239, had been perfected that the juvenile court adjudicated Joshua as a child within the meaning of § 43–247(3)(a). It then went on to terminate Lona's parental rights to Joshua. In the case of Gloria, Tabitha, T.J., and Amanda, again, after the appeal from the custody order, case No. A–94–1240, was perfected, the

juvenile court proceeded to terminate Lona's parental rights. In Joshua's case, the appeal was perfected even before the court had acquired jurisdiction over him through the adjudication process anticipated by Neb. Rev. Stat. § 43–277 et seq. (Reissue 1993 & Cum. Supp. 1994). While the juvenile court had clearly acquired jurisdiction over the remaining four children prior to the filing of the motion to terminate Lona's parental rights to those children, Lona's appeal from the December 16 order was perfected before the order of termination. We find the continuing jurisdiction of a juvenile court under § 43–295 does not include the power to terminate a juvenile's relationship with his or her parent pending an appeal, which is the situation presented with all of these children.

In support of its argument that the juvenile court's continuing jurisdiction extends to termination proceedings, the State cites *In Interest of B.L.*, 470 N.W.2d 343 (Iowa 1991). In that case, the Iowa Supreme Court found that a "request for a status report and review presents a collateral issue not directly affecting the issue on appeal" and that notwithstanding a pending appeal, the juvenile court "had jurisdiction to monitor the child's well–being as requested." *Id.* at 347. While we agree that the language of § 43–295 seems to provide the juvenile court with jurisdiction over such matters addressed in *In Interest of B.L.*, that is, the juvenile's well–being and best interests, the juvenile court in these proceedings did not merely review the children's placement or monitor the children's well–being, it proceeded to terminate Lona's parental rights. We decline to hold that a termination proceeding comes within the ambit of § 43–295. As the children were already placed outside of Lona's home in appropriate care as a result of the juvenile court's December 6 and 16 orders, we fail to see the urgency to proceed to terminate Lona's parental rights during the pendency of her appeals.

### 4. COLLATERAL AND INDEPENDENT PROCEEDINGS

The State further argues that an appeal from the December 16 orders does not preclude the juvenile court from proceeding in termination matters as the latter are collateral and independent from the former. According to the State, the sole issue raised on appeal, a change in placement regarding T.J. and

Amanda and the detention of Joshua, is separate and distinct from the issues raised by the motion to terminate Lona's parental rights in all of the children involved.

In support of this argument, the State cites *United Mineral Products Co. v. Nebraska Railroads*, 177 Neb. 898, 131 N.W.2d 604 (1964). That case involved a supersedeas bond proceeding evolving out of a previous order of the Nebraska State Railway Commission reducing railroad joint line rates from July 1 through September 30, 1962. This rate-fixing order was subsequently appealed. A ratepayer argued in *United Mineral Products Co.* that as long as the appeal from the July to September rate-fixing order was pending, the commission was without authority to fix new rates, even outside of this 3-month period. Therefore, according to the ratepayer, the lower rate fixed by the commission stayed in effect until the appeal was decided, a period beyond September 1962. The Supreme Court rejected this argument, acknowledging that while an appeal from the July to September order prevented the commission from further rendering a decision affecting rates during this 3-month period, the commission was not without authority to adjust rates outside of this 3-month period. In so holding, the court stated that an appeal proceeding divests a lower court of jurisdiction only as to matters under review, not from matters which are collateral and independent from the proceeding on appeal.

The State contends here that the juvenile court, like the commission in *United Mineral Products Co.*, was not precluded from proceeding with the termination proceedings by Lona's pending appeals because such former appeals divested the juvenile court of jurisdiction only to those specific matters under review, i.e., the detention and removal orders. Because the termination proceedings were "**collateral** or **independent** matters," the State asserts that they were not precluded from determination by the juvenile court. Brief for appellee in case No. A-95-762 at 24.

We do not agree that the termination proceedings were matters collateral and independent from the orders of detention and removal. Shipping rates for a 3-month period in *United Mineral Products Co., supra*, were understandably deemed

independent from rates for an entirely different period of time. However, the termination proceedings on the one hand and the detention and removal proceedings on the other are not as readily separable. The factual basis for the orders which were the subject of Lona's appeals in cases No. A-94-1239 and A-94-1240 were inextricably intertwined with, and procedural precursors to, the subsequent juvenile court process of terminating Lona's parental rights. To deem the termination proceedings here as independent from the very juvenile process that led to such proceedings is to ignore reality.

The State also cites *In re Kristin B.*, 187 Cal. App. 3d 596, 232 Cal. Rptr. 36 (1986), in support of its argument that a termination proceeding is separate and independent from the court's order dated December 16. In reaching its conclusion that a termination proceeding is separate and distinct from a juvenile dependency proceeding, the court in *In re Kristin B.* relied heavily upon *In re Shannon W.*, 69 Cal. App. 3d 956, 138 Cal. Rptr. 432 (1977). *In re Shannon W.* makes it clear that California law is substantially different from that found in Nebraska regarding this subject. In California, legislation enacted in 1961 removed "proceedings to declare a minor free from the custody and control of the parents" from the juvenile court and placed them in the civil code. *Id.* at 961, 138 Cal. Rptr. at 435. The court noted in *In re Shannon W.* that even prior to 1961, the difference between termination proceedings and "the ordinary business of the juvenile court" was well recognized. *Id.* at 962, 138 Cal. Rptr. at 435. Termination proceedings in California are viewed as being used to facilitate adoption, making their nature and purpose distinct from "ordinary" juvenile court proceedings. Therefore, the appellant's argument in *In re Shannon W.* that once the children had come within the jurisdiction of the juvenile court that no other department or superior court had jurisdiction to act, was rejected. California law being substantially different from Nebraska's regarding juveniles, decisions by that state's court interpreting such law are hardly relevant to resolving the present issue.

The general rule in Nebraska is against concurrent jurisdiction of trial and appellate courts. *Swain Constr. v. Ready*

*Mixed Concrete Co., ante* p. 316, 542 N.W.2d 706 (1996). Accordingly, the general rule is that after an appeal has been perfected to an appellate court, the trial court is without jurisdiction to hear a case involving the same matter between the same parties. *WBE Co. v. Papio–Missouri River Nat. Resources Dist.*, 247 Neb. 522, 529 N.W.2d 21 (1995); *Ventura v. State*, 246 Neb. 116, 517 N.W.2d 368 (1994); *Swain Constr., supra*. We conclude that this rule is applicable here. Once an appeal is pending, the juvenile court is precluded from proceeding on matters other than expressly provided for in § 43–295. As already discussed, a termination proceeding is not one of them. Therefore, because appeals were pending before this court in cases Nos. A–94–1239 and A–94–1240, the juvenile court was divested of jurisdiction to proceed with termination proceedings. Any other conclusion would encourage potentially conflicting contemporaneous proceedings and would wreak havoc on the orderly processing of juvenile matters.

Where the court from which an appeal was taken lacked jurisdiction, the appellate court acquires no jurisdiction. *WBE Co., supra*; *Garber v. State*, 241 Neb. 523, 489 N.W.2d 550 (1992). As the juvenile court lacked jurisdiction to proceed to terminate Lona's parental rights, we summarily dismiss the appeals from those orders, cases Nos. A–95–761 and A–95–762, for lack of jurisdiction. See Neb. Ct. R. of Prac. 7A(2) (rev. 1996). When an appeal is dismissed because the lower court lacked jurisdiction to enter the order appealed from, an appellate court lacks jurisdiction, but may nevertheless enter an order canceling the order issued by a lower court without jurisdiction. *WBE Co., supra*; *In re Interest of Cassandra L. & Trevor L., ante* p. 333, 543 N.W.2d 199 (1996). We therefore order the juvenile court to cancel the orders terminating Lona's parental rights. See, *id.*; *Swain Constr., supra*. The State's motion to dismiss cases Nos. A–94–1239 and A–94–1240, based on the argument that the termination of Lona's parental rights rendered the appeals moot, is thus not well taken and is denied. We therefore do not address Lona's assignments of error with regard to the termination proceedings. We will, however, address her assignments of error as they pertain to the juvenile court's orders of December 16 in both cases.

## 5. DETENTION ORDERS

### (a) Evidence Adduced at Hearing

The December 15, 1994, hearing combined the State's motions in Joshua's case and the separate case involving the other children. At the hearing, the juvenile court took judicial notice of its previous orders entered in the case involving Gloria, Tabitha, T.J., and Amanda on October 5 and November 16, 1993, and October 19, 1994, forbidding Lona from having any contact with Thomas. The court also received a certified copy of Thomas' convictions and sentences for two counts of first degree sexual assault on a child.

At the hearing, Lona admitted violating the court's orders by maintaining contact with Thomas, even after the October 1994 order. She admitted sending letters to him and receiving the same. She further admitted having phone contact with him. She also admitted reading letters from him to T.J. While she admitted that Thomas was at her house while T.J. was present in September 1994, she denied any preexisting knowledge that Thomas would be present. She testified that when she arrived home, Thomas had been arrested and taken away. She also admitted attempting to get a fake identification card in order to visit him in prison. She stated that it has been difficult for her to separate from him during the course of these proceedings; however, she states that this is because he is abusive and threatening. She also attested to her belief that he has done "something" to Tabitha. Despite knowledge of this and Thomas' conviction for first degree sexual assault on Gloria, however, Lona stated that she did not feel any need to protect her children from communicating with him, which we construe to mean she saw no need to sever the relationship between the children and Thomas.

Lisa Mathouser, supervisor of visitations between Lona and Gloria and Tabitha, testified that Gloria's father, Walter, has been present during visits with Lona and the children. She further opined that in her opinion, the children could be "better" supervised by Lona while in her care.

Mary Harris, ongoing protective service worker for the Department assigned to Lona's case, attested to her concern for

the children by virtue of Walter's presence in the home. At approximately age 35, Walter began having sexual relations with Lona, who was then age 12. She also attested to Joshua's severe diaper rash when he was removed from Lona's care. Evidence was also adduced that Amanda and Joshua suffered from diarrhea.

Also introduced into evidence was a prison visitor's form, dated October 11, 1994, indicating that Lona attempted to visit Thomas in prison with all five children. The record establishes that Lona did visit him on October 15, but that visitation by the children was denied. Letters between Lona and Thomas were also introduced into evidence. They were dated November 2, 5, 8, and 11, 1994. Among other topics, the letters discussed Lona's desire to be with Thomas, her desire for increased contact and visits, and her plans to become his wife.

Based on Lona's failure to abide by court orders and evidence of serious diarrhea and rashes suffered by Amanda and Joshua, the court "continue[d] the detention" of the three children.

Lona argues that this evidence is insufficient to support the juvenile court's decision to detain Joshua and to remove T.J. and Amanda from her home as no evidence of harm or evidence of a specific risk of harm to the children was shown.

### (b) Sufficiency of Evidence

At a detention hearing, the State must prove by a preponderance of the evidence that the custody of a juvenile should remain in the Department pending adjudication. *In re Interest of R.G.*, 238 Neb. 405, 470 N.W.2d 780 (1991); *In re Interest of Cherita W., ante* p. 287, 541 N.W.2d 677 (1996). While this standard is clearly applicable to Joshua as he had not yet been adjudicated, as previously pointed out, T.J. and Amanda had already been adjudicated to be within § 43-247(3)(a). Once a juvenile has been adjudicated, the juvenile court had broad discretion as to his or her disposition. *In re Interest of P.L., S.L., and A.L.*, 236 Neb. 581, 462 N.W.2d 432 (1990). The Nebraska Supreme Court has stated:

[O]nce there has been the adjudication that a child is a juvenile within the meaning of the act, the foremost purpose or objective of the Nebraska Juvenile Code is promotion and protection of a juvenile's best interests,

with preservation of the juvenile's familial relationship with his or her parent(s) where continuation of such parental relationship is proper under the law.

*In re Interest of J.S., A.C., and C.S.*, 227 Neb. 251, 263, 417 N.W.2d 147, 156 (1987). Even applying a preponderance of the evidence standard as espoused by Lona to the three children, we find the evidence sufficient to support the court's findings.

At the outset, we note that Lona's contention that because Joshua was not named in the court's previous orders, which pertain only to Gloria, Tabitha, T.J., and Amanda, her failure to comply with said orders is irrelevant in ascertaining whether the detention of Joshua is proper. The fact that Lona engaged in conduct violative of the court's orders is not determinative. Rather, the determinative factor is whether Lona engaged in conduct potentially harmful to Joshua or contrary to his best interests.

We likewise reject Lona's argument that absent a showing of harm to the children, the court's order removing T.J. and Amanda and detaining Joshua was not supported by the evidence. The State is not required to prove harm to a child prior to intervention. *In re Interest of R.G., supra.*

In *In re Interest of B.B. et al.*, 239 Neb. 952, 479 N.W.2d 787 (1992), the Nebraska Supreme Court upheld the termination of parental rights based upon evidence of the mother's failure to protect her children from both her husband and another individual, both of whom she had accused of physically and/or sexually abusing her children. The court noted that although the mother had accused her husband of abusing the children, she continued to reside with him intermittently. A psychologist testified in *In re Interest of B.B. et al.* of the mother's lack of insight and motivation to protect her children from further abuse. The court stated:

> Because of the appellant's lack of insight and her lack of motivation to place the interests of her children ahead of her own, the court did not err in finding there was clear and convincing evidence to establish that the appellant had substantially, continuously, and repeatedly neglected her children and had refused to give them the necessary parental care and protection.

*Id.* at 956, 479 N.W.2d at 791.

Although no psychologist testified in this case that Lona lacks the insight and motivation to protect her children, we believe such is established by a preponderance of the evidence. In addition to Thomas' convictions of sexually assaulting Gloria and another child, Lona testified to her belief that Thomas may have also done "something" to Tabitha. Despite this knowledge, Lona testified that she did not feel any need to protect her children from communications with Thomas. As late as October 1994, she attempted to bring all of her children with her to visit him in prison. Also, through at least November 1994, she maintained phone and letter contact with him. According to these letters, she had every intention of becoming his wife.

Lona's argument that she maintained contact with Thomas out of fear is contradicted by the letters which make it clear that she was desiring increased contact with him and expressing frustration because he did not want to see her more. We also note that unlike *In re Interest of B.B., supra*, which required clear and convincing evidence to terminate parental rights, in this case, the State needed to show only by a preponderance of the evidence that these children should have remained in the Department's custody.

Contrary to Lona's argument, the State is not required to establish that her children were in danger of actual harm by virtue of her continued contact with Thomas. In *In re Interest of W.C.O.*, 220 Neb. 417, 370 N.W.2d 151 (1985), the Supreme Court upheld the adjudication of a child by reason of the faults and habits of his father, where the father had been charged with first degree sexual assault on another child. The father argued in *In re Interest of W.C.O.* that the adjudication was improper because there was no evidence that the child at issue had been affected by the alleged sexual conduct. The court rejected this argument, stating:

> It is not the intent or purpose of the juvenile code to require the separate juvenile court to wait until disaster has befallen a minor child before the court may acquire jurisdiction. If it is reasonable to assume that injury will occur absent action by the court, then the court may assume jurisdiction and act accordingly.

*Id.* at 419, 370 N.W.2d at 153. The court further noted that even if the evidence were insufficient to establish that the child was in physical danger, it was sufficient to establish that the child was likely to be raised in an "immoral atmosphere." *Id.* at 421, 370 N.W.2d at 154. See, also, *In re Interest of M.B. and A.B.*, 239 Neb. 1028, 480 N.W.2d 160 (1992) (adjudication upheld where father had been convicted of committing sex crimes against other children and mother continued to leave daughters in his care; state not required to allege that daughters had been subjected to sexual abuse); *In re Interest of C.P.*, 235 Neb. 276, 455 N.W.2d 138 (1990) (termination of parental rights upheld where mother witnessed abuse and was victim of it, yet allowed child to be placed in abuser's care and custody).

Finally, Lona challenges the court's order by arguing that the State failed to show that reasonable efforts had been made to prevent the need for the children's removal, as required by § 43-254. However, as the State points out, § 43-254 applies only when a juvenile is taken into temporary custody without a warrant or court order. Such is not the case here as the three children were removed pursuant to a court order. Moreover, as to T.J. and Amanda, there is overwhelming evidence of spurned efforts to prevent their continued removal from Lona's home. Lona's argument is without merit.

Thus, we find the evidence sufficient to support the court's order to detain Joshua pending adjudication and to remove T.J. and Amanda from Lona's home.

## VI. CONCLUSION

We therefore affirm the final, appealable orders of the juvenile court detaining Joshua and removing T.J. and Amanda from Lona's home in cases Nos. A-94-1239 and A-94-1240, as they are supported by the evidence. The State is not required to prove actual harm to the children prior to intervention. In cases Nos. A-95-761 and A-95-762, we dismiss the appeals for lack of jurisdiction over the orders appealed from. A termination proceeding is beyond the continuing jurisdiction of the juvenile court as provided for in § 43-295 and not independent and collateral from the orders of detention and removal. We direct the juvenile court to cancel its orders

terminating Lona's parental rights, because it lacked jurisdiction to enter them.

JUDGMENTS IN NOS. A–94–1239 AND A–94–1240 AFFIRMED.

APPEALS IN NOS. A–95–761 AND A–95–762 DISMISSED, AND CAUSES REMANDED WITH DIRECTIONS.